T. KEVIN ROOSEVELT, SBN 205485
*kroosevelt@ftrlfirm.com*
JARED M. TOFFER, SBN 223139
*jtoffer@ftrlfirm.com*
**FINLAYSON TOFFER ROOSEVELT & LILLY LLP**
15615 Alton Parkway, Suite 250
Irvine, CA 92618
Telephone:949.759.3810
Facsimile: 949.759.3812

Attorneys for Plaintiff
QUIDEL CORPORATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

QUIDEL CORPORATION, a Delaware corporation,

Plaintiff,

v.

SIEMENS MEDICAL SOLUTIONS USA, INC., a Delaware corporation, and DOES 1-50 INCLUSIVE,

Defendants.

CASE NO. '16CV3059 BTM AGS

**COMPLAINT FOR:**

**1. LANHAM ACT FALSE ADVERTISING;**

**2. STATUTORY UNFAIR COMPETITION AND FALSE ADVERTISING;**

**3. INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; AND**

**4. NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**JURY TRIAL DEMANDED**

Filing Date:
Trial:

**JURY TRIAL DEMAND**

1. Plaintiff Quidel Corporation ("Quidel" or "Plaintiff") hereby demands a jury trial.

**PARTIES**

2. Quidel is a Delaware corporation with its principal place of business in San Diego, California.

3. Defendant Siemens Medical Solutions USA, Inc. ("Siemens" or "Defendant") is a Delaware corporation with its principal place of business in Malvern, Pennsylvania.

4. The true names and capacities, whether individual, corporate, association, or otherwise of Defendants named herein as DOES 1 through 50 are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege their true names and capacities when the same have been ascertained.

5. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants and/or their agents and employees are responsible in some manner for the events and happenings alleged in this Complaint, and proximately caused Plaintiff's damages.

6. At all times herein mentioned, upon information and belief, Defendants were the agents, servants and/or employees of the Defendants, and Defendants' acts shall mean that Defendants did the acts alleged through their officers, directors, managers, agents, representatives and/or employees while they were acting within the course and scope of said agency, authority and employment.

**JURISDICTION**

7. This is a civil action for false advertising under the Lanham Act (15 U.S.C. § 1125(a)); unfair competition and false advertising under California Business and Professions Code sections 17200 and 17500; and intentional and negligent interference with prospective economic advantage under California law.

8. This Court has subject matter jurisdiction over Plaintiff's claims for violation of the Lanham Act pursuant to 15 U.S.C. § 1125; and 28 U.S.C. §§ 1331 and 1338(a). This Court has original and/or supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367(a), because the state law claims are joined with substantial and related claims under the Lanham Act.

9. Personal jurisdiction over Defendants is proper because they are marketing products to customers in this District and State, and Plaintiff is informed and believes, and thereon alleges, that Defendants have distributed the subject products in this District and State.

10. Venue is proper in this District and before this Court pursuant to 28 U.S.C. § 1391(b).

**FACTUAL ALLEGATIONS**

11. Plaintiff is a diagnostic healthcare manufacturer with core competencies and capabilities including immunoassay development, automated manufacturing, monoclonal antibody characterization and development, and molecular assay development.

12. Plaintiff developed, promotes and sells the Thyretain TSI Reporter BioAssay ("Thyretain"). Thyretain is intended for the qualitative detection in serum of thyroid-stimulating immunoglobins ("TSI"). The detection of TSI, in conjunction with other clinical and laboratory findings, may be useful as an aid in the differential diagnosis of patients with Graves' disease (GD). Thyretain is the only commercially available assay that detects TSI only, as opposed to both thyroid-stimulating and thyroid-blocking immunoglobins.

13. Defendant is a healthcare company that specializes in medical imaging, laboratory diagnostics, and healthcare information technology. Defendant developed, promotes and sells the IMMULITE 2000/2000 XPi TSI assay ("IMMULITE Assay"), a product intended to compete with Thyretain.

14. Defendant has advertised the IMMULITE Assay on its website, in press releases and in other marketing materials as detecting TSI only, but has failed to disclose that the IMMULITE Assay also detects thyroid-blocking antibodies. Specifically, and without limitation, Defendant has made and disseminated the following statements:

A. "The IMMULITE 2000/2000 XPi TSI assay detects only thyroid stimulating antibodies."

B. "Unlike other currently available diagnostic tests, the IMMULITE 2000/2000 XPi TSI assay detects the presence of thyroid stimulating antibodies only, making the differential diagnosis of GD faster and more accurate."

C. "TSHR autoantibody (TRAb) assays do not distinguish between TSI and TBI. The IMMULITE 2000 TSI assay utilizes recombinant human TSH receptors (hTSHR) for the specific detection of thyroid stimulating autoantibodies."

15. Plaintiff is informed and believes, and on that basis alleges, that credible scientific data has found that, contrary to the representations made by Defendant, the IMMULITE Assay detects both stimulating and blocking antibodies, not TSI only. The statements made by Defendant about the IMMULITE Assay are therefore false and misleading.

16. Plaintiff is further informed and believes and on that basis alleges that Defendant's false and misleading statements are creating confusion in the marketplace concerning the IMMULITE Assay's ability to specifically identify TSI and, as a result, will lead to false positives and the misdiagnosis and mistreatment of patients, including, for example, potential unnecessary surgery to remove all or part of a patient's thyroid (thyroidectomy or subtotal thyroidectomy).

17. Plaintiff is further informed and believes and on that basis alleges that Defendants' marketing/advertising of the IMMULITE Assay as detecting TSI only

may lead to reimbursement that should be reserved for TSI only assays because true TSI only assays are reimbursed at higher rates than assays that detect both stimulating and blocking antibodies like the IMMULITE Assay. As a result, payers will pay higher costs for the IMMULITE Assay than they should for an assay that detects both stimulating and blocking antibodies.

18. Plaintiff is informed and believes and on that basis alleges that the cost of the IMMULITE Assay is less than Thyretain. As a result, Defendants improperly benefit from the false/misleading advertising of the IMMULITE Assay by selling the IMMULITE Assay for less than Thyretain, thereby promoting the ability of customers to capture more of the difference between Medicare reimbursement for a true TSI only assay (Thyretain) and the cost of the IMMULITE Assay (not a true TSI only assay), which is less than Thyretain.

19. In response to concerns raised by Plaintiff about Defendant's marketing of the IMMULITE Assay as detecting TSI only, Defendant agreed to remove the term "only" from various marketing statements. Despite the agreement to modify its marketing statements, Defendant has continued to describe the IMMULITE Assay in a false and misleading manner, representing, among other things, the following:

A. "The IMMULITE 2000/2000 XPi TSI assay detects thyroid stimulating antibodies, the specific cause of Graves' Disease pathology, with 98.6% sensitivity and 98.5% specificity."

B. "The IMMULITE® 2000/2000 XPi TSI assay is the first automated and semiquantitative TSI assay available today. TSH receptor antibody (TRAb) assays detect both thyroid-blocking and -stimulating antibodies. However, blocking antibodies inhibit TSH stimulation of thyroid cells and lead to hypothyroidism. The IMMULITE 2000/2000 XPi TSI assay detects thyroid stimulating antibodies, the specific cause of GD pathology, with 98.5% specificity."

These statements continue to misleadingly imply that the IMMULITE Assay detects TSI only. In addition, Defendant continues to describe the IMMULITE Assay as a "TSI assay," which is inconsistent with scientific findings that the IMMULITE Assay detects both blocking and stimulating antibodies, not TSI only.

**FIRST CAUSE OF ACTION**

**(For Lanham Act False Advertising Against All Defendants)**

20. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 19, above, as if fully set forth herein.

21. Defendants have made and distributed in interstate commerce in this District advertisements and marketing materials that contain false and misleading statements of fact regarding the IMMULITE Assay. These advertisements and marketing materials contain actual misstatements and/or misleading statements or failures to disclose. Specifically the statements (1) that the IMMULITE Assay detects TSI only and (2) that the IMMULITE Assay is a "TSI assay" that detects TSI only, while failing to disclose that the IMMULITE Assay also detects thyroid-blocking antibodies, are false and/or misleading.

22. These statements actually deceive, or have a tendency to deceive, a substantial segment of Defendants' customers and potential customers. This deception is material in that it concerns the inherent quality, characteristics and efficacy of the IMMULITE Assay and is likely to influence the purchasing decisions of Defendants' customers.

23. Defendants' false and misleading advertising statements and omissions injure both consumers and Plaintiff.

24. Defendants' false and misleading advertising statements and omissions violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

25. Defendants have caused and will continue to cause, immediate and irreparable injury to Plaintiff, including injury to Plaintiff's business, reputation and goodwill, for which there is no adequate remedy at law. Plaintiff is therefore entitled

to an injunction under 15 U.S.C. § 1116 restraining Defendants, their agents, employees, representatives and all persons acting in concert with Defendants from engaging in future acts of false and/or misleading advertising and ordering removal of all of Defendants' false and/or misleading advertisements and marketing statements.

26. Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' acts in violation of 15 U.S.C. § 1125(a). Plaintiff is at present unable to ascertain the full extent of the monetary damages it has sustained by reason of Defendants' acts.

27. Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from Defendants the gains, profits and advantages that Defendants have obtained as a result of Defendants' acts in violation of 15 U.S.C. § 1125(a). Plaintiff is at present unable to ascertain the full extent of the gains, profits and advantages Defendants have obtained by reason of Defendants' acts.

28. Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover the costs of this action. Moreover, Plaintiff is informed and believes, and on that basis alleges, that Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional case entitling Plaintiff to recover additional damages and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

**(Statutory Unfair Competition and False Advertising Under California Business and Professions Code §§ 17200 and 17500 et seq., Against All Defendants)**

29. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 28, above, as if fully set forth herein.

30. Defendants' actions described above, including Defendants' false and misleading advertising/marketing of the IMMULITE Assay as a TSI assay and as detecting TSI only, constitute false advertising and unfair competition in violation of the laws of the State of California.

31. By their actions, Defendants have engaged in false advertising and unfair competition in violation of the statutory law of the state of California, Cal. Bus. & Prof. Code §§ 17200 and 17500, et seq., and, as a result Plaintiff has suffered and will continue to suffer damages to its business, reputation, and goodwill.

32. As a direct and proximate result of Defendants' willful and intentional actions, Plaintiff has suffered damages in an amount to be determined at trial and, unless Defendants are restrained, Plaintiff will continue to suffer irreparable damage.

**THIRD CAUSE OF ACTION**

**(For International Interference With Prospective Economic Advantage Against All Defendants)**

33. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 32, above, as if fully set forth herein.

34. Plaintiff alleges on information and belief that Defendants, willfully and deliberately committed the wrongful acts alleged herein with the intent to harm Plaintiff financially and to induce Plaintiff's existing customers and prospective customers to sever their present and prospective business relationships with Plaintiff or reduce their purchases of Plaintiff’s products.

35. As a proximate result of such wrongful acts, Plaintiff has suffered injury and damage to its business and goodwill in an amount to conform to proof at trial.

**FOURTH CAUSE OF ACTION**

**(For Negligent Interference with Prospective Economic Advantage)**

36. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 35, above, as if fully set forth herein.

37. Plaintiff is informed and believes, and on that basis alleges, that as a direct competitor to Plaintiff, Defendants knew or should have known that their false and misleading advertising/marketing of the IMMULITE Assay would have a direct effect on Plaintiff's Thyretain business.

38. The adverse effect on Plaintiff's business was foreseeable and Plaintiff's Thyretain business has been adversely impacted as a result.

39. Plaintiff is informed and believes, and on that basis alleges, that Defendants' false and misleading advertising/marketing of the IMMULITE Assay is a direct cause of the adverse impact on Plaintiff's Thyretain business.

40. Defendants' conduct was willful and knowing considering that Defendants continued to falsely and misleadingly advertise/market the IMMULITE Assay after Plaintiff informed Defendants of the problems with doing so.

41. Public policy supports a duty of care on the part of Defendants because the failure or refusal of Defendants to correct the false and misleading advertising/marketing of the IMMULITE Assay will result in customer’s misuse of the IMMULITE Assay and the misdiagnosis and mistreatment of patients. In addition, as explained above, the false/misleading advertising is likely to lead to Medicare coding and billing errors, resulting in improper reimbursements.

42. By engaging in the wrongful conduct described herein, Defendants negligently failed to take ordinary precautions to avoid interfering with Plaintiff's prospective business opportunities and to avoid causing Plaintiff injury as a result. Defendants have thus breached their duty of care owed to Plaintiff.

43. As a proximate result of Defendants' breach of duty owed to Plaintiff, Plaintiff has suffered injury and damage to its business and goodwill in an amount to confirm to proof at trial.

///

///

///

///

///

///

///

**PRAYER**

WHEREFORE, Plaintiff requests the following relief:

1. For temporary, preliminary and permanent injunctive relief prohibiting Defendants, their agents, or anyone working for, in concert with or on behalf of Defendants from engaging in false or misleading advertising with respect to the IMMULITE Assay and/or violating Section 43(a) of the Lanham Act and/or California's unfair competition laws, which relief includes but is not limited to removal of all false or misleading advertisements/marketing and corrective advertising to remedy the effects of Defendants' false advertising/marketing;

2. For an order requiring Defendants to correct any erroneous impression persons may have derived concerning the nature, characteristic, qualities and/or efficacy of the IMMULITE Assay, including without limitation the placement of corrective advertising and providing written notice to the public;

3. That Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Plaintiff by using false, deceptive or misleading statements of fact that misrepresent the nature, quality, characteristics and/or efficacy of the IMMULITE Assay;

4. That Defendants be adjudged to have violated California's unfair competition laws, including Cal. Bus. & Prof. Code §§ 17200 and 17500 by engaging in deceptive trade practices and injuring Plaintiff by using deceptive representations in connection with its goods or services;

5. That Plaintiff be awarded general, special, actual and/or statutory damages, according to proof at trial;

6. That Plaintiff be awarded Defendants' profits obtained by Defendants as a consequence of their conduct;

7. That Plaintiff recover it costs and attorneys fees;

8. That all of Defendants' misleading and deceptive materials be removed and destroyed pursuant to 15 U.S.C. § 1118;

9. That Plaintiff be granted pre-judgment and post-judgment interest;

10. That Plaintiff be awarded punitive and exemplary damages; and

11. For such other and further relief as the Court may deem just and proper.

DATED: December 19, 2016

FINLAYSON TOFFER ROOSEVELT & LILLY LLP

By: /s/ T. Kevin Roosevelt
T. Kevin Roosevelt

Attorneys for Plaintiff QUIDEL CORPORATION