|   |   |
|---|---|
| 1 | GORDON & REES LLP |
| 2 | M.D. Scully (SBN 135853)<br>101 W. Broadway, Suite 2000 |
| 3 | San Diego, CA 92101<br>mscully@gordonrees.com |
| 4 | Tel: (213) 270-7871 |
| 5 | PATTERSON BELKNAP WEBB & TYLER LLP<br>Erik Haas (admitted *pro hac vice*) |
| 6 | 1133 Avenue of the Americas<br>New York, New York 10036 |
| 7 | ehaas@pbwt.com<br>Tel: (212) 336-2117 |
| 8 | *Attorneys for Defendants Siemens* |
| 9 | *Medical Solutions USA, Inc. and*<br>*Siemens Healthcare Diagnostics Inc.* |

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| QUIDEL CORPORATION, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SIEMENS MEDICAL SOLUTIONS USA, INC., a Delaware corporation, SIEMENS HEALTHCARE DIAGNOSTICS INC. a California corporation, and DOES 1-50 INCLUSIVE,<br><br>Defendants. | Case No. 3:16-CV-03059-BTM-AGS<br><br>**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE THE SURVEY, EXPERT REPORT, AND TESTIMONY OF MATTHEW G. EZELL**<br><br>Judge:    Hon. Barry T. Moskowitz<br>Date:     June 7, 2019<br>Time:    11:00 am<br>Courtroom: 15B<br><br>[Filed and served concurrently with Declaration of Erik Haas] |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT .............................................................................................................. 2

I. The Ezell Survey Should Be Excluded Based On Its Undisputed Flaws ............ 2

II. Quidel's Substantive Arguments Also Fail ........................................................ 5

    A.   Ezell Surveyed The Wrong Universe Of Respondents ................................. 5

    B.   Ezell Asked Fatally Ambiguous Questions .................................................... 8

    C.   Ezell Did Not Disclose His Coding Methodology ........................................ 9

CONCLUSION ......................................................................................................... 10

Defendants Siemens Medical Solutions USA, Inc. and Siemens Healthcare Diagnostics Inc. (together, "Siemens") respectfully submit this reply memorandum in further support of their motion exclude the survey, expert report, and testimony of Plaintiff Quidel Corporation's ("Quidel") expert Matthew G. Ezell.

## PRELIMINARY STATEMENT

Siemens' opening memorandum identified eight significant defects in the physician survey conducted by Matthew G. Ezell (the "Ezell Survey"), which individually and collectively render the Ezell Survey irrelevant, biased, and inadmissible. Quidel's opposition *concedes* at least five of the errors—among others, the Ezell Survey asked leading questions, introduced several forms of bias, and used a flawed control—and recognizes the legal authorities that exclude surveys based on these errors. Indeed, Quidel devotes most of its brief to summarizing, not distinguishing, those cases. Quidel's concessions alone require exclusion of Ezell's testimony and his Survey.

Quidel's responses to the additional flaws are unavailing. Siemens' opening memorandum details the undisputed evidence, including admissions Quidel made in its own interrogatories, establishing that laboratories—not the physicians surveyed by Ezell—make brand-purchasing decisions regarding the parties' assays. Quidel now argues that physicians influence demand for the parties' assays, but this argument obfuscates the real issue: physicians' opinions are irrelevant because the undisputed evidence shows that physicians do not influence **brand-purchasing decisions**. That evidence includes the admissions of Quidel's own expert and fact and witnesses, its practices in the regular course of business, its failed attempt to have physicians cause laboratories to switch their brand selections, and the testimony of the laboratory customers themselves. Because Ezell surveyed only physicians—who do not purchase the parties' assays, let alone specifically order them by brand—the Survey is irrelevant and should be excluded.

Next, Quidel claims that the Ezell Survey's questions asking if Siemens'

assay is a "TRAb assay" and if it detects "TSI only" were not ambiguous because the parties agree that "TSI" is an acronym for "thyroid-stimulating immunoglobulins" and "TRAb" likewise stands for "TSH receptor antibody." This is unresponsive to Siemens' argument, which is that the terms "TSI *only*" and "TRAb *assay*" are undefined and inherently ambiguous. On that point, Quidel offers no substantive response. Nor could it, given that Quidel's own experts testified that these terms do not have well-accepted definitions and there is a "lot of confusion" about their interpretation. Ezell's failure to define these terms or ask respondents how they understood these terms means there is no way of knowing whether respondents were actually misled in the particular manner alleged by Quidel. This flaw renders the Ezell Survey unreliable and inadmissible.

Finally, Quidel briefly claims that a long block quote from Ezell's deposition testimony provides the method for Ezell's coding process. In fact, all that quote shows is the lack of a clear, consistent coding methodology—yet another error that warrants exclusion.

In short, even if the Ezell Survey were somehow relevant to this litigation (it is not), it is so plagued by bias and other methodological errors that its results are entirely unreliable. The proof is in Ezell's own data: in response to an initial open-ended question, only **seven percent of respondents** even mentioned "TSI only" when describing the "main message" conveyed by Siemens' website. It was only after respondents were subjected to repetitious, leading questions that Ezell finally got the results that Quidel wanted. This is exactly the type of results-oriented expert opinion that the *Daubert* process is intended to screen out. The Court should exclude the Ezell Survey, Ezell's report, and his testimony.

## ARGUMENT

### I. THE EZELL SURVEY SHOULD BE EXCLUDED BASED ON ITS UNDISPUTED FLAWS

As detailed in Siemens' opening memorandum (Dkt. 135-1 and hereinafter

"Mot."), there are at least eight flaws in the Ezell Survey:

1. Ezell surveyed an incorrect and irrelevant universe of respondents because the surveyed physicians do not place brand-specific orders and do not influence laboratories' brand selections (*id.* at 10-13);

2. Ezell asked vague and ambiguous questions that were premised on the undefined terms "TSI only" and "TRAb assay" (*id.* at 13-15);

3. Ezell biased his results by re-asking the same questions, which telegraphed the desired answers to respondents (*id.* at 16-18);

4. Ezell asked leading questions that signaled the answers that respondents should give (*id.* at 18);

5. Ezell turned his survey into a reading test by forcing respondents to repeatedly review the stimulus before answering each question (*id.* 18-19);

6. Ezell used a biased and flawed control stimulus (drafted entirely by Quidel's counsel) containing gratuitous language that all but ensured the results Quidel wanted (*id.* at 20-21);

7. Ezell failed to disclose his coding methodology, making it impossible to determine how he reached his conclusions (*id.* at 22-23); and

8. Ezell ignored the results of his open-ended questions, which contradicted his conclusions (*id.* at 14, 21).

Quidel's opposition provides no substantive responsive to *five* of these errors. Specifically, Quidel concedes that the Ezell Survey asked leading questions, re-asked the same questions, was structured as a reading test, used a flawed control, and ignored contradictory data. Instead, Quidel only argues that exclusion is not the proper remedy.

And yet, courts routinely exclude survey experts for precisely these reasons, and Quidel's attempt to distinguish the relevant legal authorities (by merely reciting their holdings) fails. For example, Quidel recognizes that in *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 104 F. Supp. 2d 1033 (S.D. Ind. 2000), the court excluded a survey because it asked questions that were "highly leading and suggestive" and failed to include a proper control. Opposition Memo. (Dkt. 175

and hereinafter "Opp.") at 21-22. Quidel does not dispute that the Ezell Survey suffers from these same defects.[1] Next, Quidel agrees that in *York v. Starbucks Corp.*, 2011 U.S. Dist. LEXIS 155682, at *36 (C.D. Cal. Nov. 23, 2011), the court correctly excluded a survey that "failed to comply with well-established principles designed to insure the reliability of survey data." Opp. 13. Quidel does not contest that the Ezell Survey was an improperly designed survey that re-asked the same questions to generate desired results. Finally, Quidel stresses that in *Wallace v. Countrywide Home Loans Inc.*, 2012 U.S. Dist. LEXIS 190575 (C.D. Cal. Aug. 21, 2012), the court excluded a survey due to the "presence of bias," a "significant infirmity, which infects the entire [survey]." Opp. 15-16. The undisputed "presence of bias" is exactly why the Ezell Survey must be excluded here, and Quidel does not explain why cases such as *Wallace* do not require that outcome.

Elsewhere, Quidel attempts to distinguish Siemens' cases by emphasizing that the surveys in those cases "suffered from multiple defects." *Id.* at 16 (collecting cases). This is precisely Siemens' point: the multiple, uncontested defects in the Ezell Survey have the cumulative effect of making "reliance on th[e] survey unreasonable." *Icon Enters. Int'l, Inc. v. Am. Prods. Co.*, 2004 U.S. Dist. LEXIS 31080, at *71 (C.D. Cal. Oct. 7, 2004); *see also Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 612 (S.D.N.Y. 2007) ("[T]here are only so many questions of weight that can be tolerated; as each flaw in a survey diminishes its reliability and probative value, and correspondingly increases the

---

[1] Quidel does not contest that Ezell's control stimulus includes additional, unnecessary language that led respondents to conclude that the control stimulus did not convey a "TSI only" message. Mot. 20. In addition, Ezell's control stimulus incorrectly and unnecessarily omitted "TSI" from the name of Siemens' assay, which further biased the results to achieve Quidel's desired outcome. *Id.* at 21. This change to the name of Siemens' assay in the control stimulus was improper because Quidel long ago conceded that it is not challenging the name of Siemens' product (Dkt. 18 at 7), and the Court accepted that concession in denying Siemens' motion to dismiss the First Amended Complaint (Dkt. 22 at 11).

risk of jury confusion and prejudice, eventually the cumulative effect of the flaws mandates exclusion."); *EEOC v. Freeman*, 778 F.3d 463, 467 (4th Cir. 2015) (the "sheer number of mistakes and omissions" in an analysis warranted exclusion).[2] Whether considered individually or in the aggregate, the Ezell Survey's numerous, uncontested defects render it irrelevant, unreliable, and inadmissible.

## II.     QUIDEL'S SUBSTANTIVE ARGUMENTS ALSO FAIL

Setting aside the uncontested errors in the Ezell Survey, Quidel's opposition disputes three additional flaws in the Survey. *First*, Quidel contends that physicians were the proper survey universe—but offers no response to the undisputed evidence that physicians' opinions are irrelevant to this litigation because physicians do not make brand-purchasing decisions. *Second*, while Quidel claims that its key Survey questions—which asked whether Siemens' assay detects "TSI only" and is a "TRAb assay"—are unambiguous, it cannot dispute its own witnesses' sworn testimony acknowledging the ambiguity of those terms. *Third*, Quidel provides a long block quote from Ezell's deposition testimony that Quidel claims provides the basis for Ezell's coding methodology. Yet that testimony only further highlights the vagaries and uncertainties in Ezell's coding process. These three further flaws in the Ezell Survey provide additional grounds for exclusion.

### A.     Ezell Surveyed The Wrong Universe Of Respondents

In its pleadings, Quidel alleges that Siemens' false advertising caused its laboratory customers to switch from Quidel's assay to Siemens' assay. *See* FAC

---

[2] At a minimum, and as Quidel concedes, the multiple flaws in the Ezell Survey give it no probative value in the Court's consideration of the pending summary judgment motions. *See* Opp. 8 (due to multiple flaws, "no weight can be given to the [plaintiff's] study"); *id.* at 10 (selection of wrong universe "limits the surveys' probative value even further"); *id.* at 11 (incorrect universe renders a survey "unreliable"); *see also Icon Enters.*, 2004 U.S. Dist. LEXIS 31080, at *71 ("[S]erious flaws in a survey will make any reliance on that survey unreasonable.").

(Dkt. 12) ¶ 37.  Quidel has also repeatedly affirmed in its discovery responses that just two customers—reference laboratories LabCorp and Sonic—switched from Quidel's assay to Siemens' assay.  Mot. 3.  Quidel has never alleged that physicians were deceived, or that physicians have any influence over the laboratories' assay-selection process.  *Id.*

Discovery has since confirmed that physicians do not make brand-specific purchasing decisions or influence laboratories' brand-specific purchasing decisions.  Consequently, physicians' interpretations of Siemens' advertising have no bearing on Quidel's theory of liability, which is premised solely on the (repeatedly disproven) contention that the ***laboratories*** were deceived. ▮

▮

▮ [3] *Id.* at 4. ▮

▮

*Id.* ▮

▮ *Id.* ▮

▮

▮ *Id.*

Quidel has no response to this undisputed evidence.  Rather, Quidel cites to several pieces of evidence that further confirm that physicians order generic "TSI" tests, not specific assay brands.  *See* Roosevelt Decl. Ex. 1 (▮); *id.* Ex. 2 (▮); *id.* Ex. 11 (▮); *id.* Ex. 12 (▮

---

[3] ▮

▮ *See* Dkt. 138-1 at 14.

1  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓).[4]  And while Siemens (and Quidel) discussed the use of its TSI assay with physicians in the regular course of business, they did so to expand the market for TSI assays, not to determine brand selection. Tellingly, Quidel has not identified a single physician who "switched" from Thyretain to the IMMULITE TSI assay because of Siemens' advertising.

Accordingly, the Ezell Survey—which surveyed only physicians—tests an irrelevant universe of respondents. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Mot. 11-12.  Quidel acknowledges that exclusion is proper where, as here, "[t]he survey provided no basis to indicate how its sample was selected, or why its respondents were representative of the relevant population." Opp. 7 (quoting *Reinsdorf v. Skechers USA*, 922 F. Supp. 2d 866 (C.D. Cal. 2013)); *see also Icon Enters.*, 2004 U.S. Dist. LEXIS 31080, at *78 (a survey "that provides information about a wholly irrelevant universe of respondents is itself irrelevant"). And Quidel further concedes that in *In re Fluidmaster, Inc.*, 2017 U.S. Dist. LEXIS 48792, at *94 (N.D. Ill. Mar. 31, 2017), the court rejected a survey that asked "an unrepresentative group of purchasers to artificially assign values among an arrangement of potentially unimportant attributes." Opp. 9.  The same defects warrant exclusion here.

---

[4] Quidel also cites snippets of LabCorp's and Sonic's testimony out of context to suggest that physicians have a role in the purchasing decision.  Opp. 6 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Haas Reply Decl. Ex. 19 at 165. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Haas Decl. Ex. 4 at 169-70. ("Haas Decl." and "Haas Reply Decl." refer to the declarations of Erik Haas filed concurrently with Siemens' opening and reply memoranda, respectively)

1  The additional cases cited by Quidel do not hold otherwise.  In *Merck Eprova AG v. Brookstone Pharms., LLC*, the court accepted a survey of end-purchaser pharmacists because the record showed that pharmacists make brand substitution decisions.  920 F. Supp. 2d 404, 414-15 (S.D.N.Y. 2013).  Similarly, in *Marketquest Grp., Inc. v. BIC Corp.*, the court accepted a survey of end consumers because consumers make individual purchasing decisions.  2018 U.S. Dist. LEXIS 62360, at *14 (S.D. Cal. Apr. 12, 2018).  In contrast, here there is no evidence that physicians make brand-specific purchasing decisions.  As *Marketquest* recognizes, the Ezell Survey is inadmissible because "the responses of the surveyed universe [i.e., physicians] are irrelevant to the opinions of the universe at issue [i.e., laboratory customers]."  *Id.* at *9.

### B.   Ezell Asked Fatally Ambiguous Questions

The Ezell Survey is also inadmissible due to its use of ambiguous and undefined terms such as "TSI only" and "TRAb assay"—the two key terms that form the basis of Ezell's conclusions and Quidel's false advertising claims.  Mot. 13-15.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id.* at 14; Haas Decl. Ex. 18 at 227.  And the Ezell Survey's own results show that "TSI only" is ambiguous.  Contrary to Quidel's litigation position that "TSI only" is necessarily interpreted in absolute terms, dozens of respondents indicated that Siemens' assay detected "TSI only" *because* it detected TSI with "98.5% specificity" (and not with 100% specificity).  Mot. 14.  Such respondents, who plainly do not share Quidel's proffered definition of "TSI only," could not have been misled since Quidel concedes that Siemens' specificity data is accurate.  *See* Dkt. 18 at 12.

Quidel offers no response to any of this, and attempts to side step Siemens' argument.  Quidel notes that Siemens' website explains that the acronym "TSI"

stands for "thyroid-stimulating immunoglobulins" and "TRAb" stands for "TSH receptor antibody." Opp. 13. No one disputes what those acronyms stand for. The problem, unaddressed in Quidel's opposition, is that the terms "TSI *only*" and "TRAb *assay*" are undefined and concededly ambiguous—making it impossible to determine whether respondents were misled. As Quidel acknowledges, exclusion is proper where, as here, the key questions "suffer[] from the same ambiguity as does" the advertising claims at issue in the litigation. Opp. 14 (quoting *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 279 (4th Cir. 2002)); *see also Wallace*, 2012 U.S. Dist. LEXIS 190575, at *15 (excluding survey that does not define an "ambiguous term"). Quidel does not cite a single case to the contrary.

In addition, Quidel's shifting litigation positions as to the definition of "TSI only" further highlight the hopeless ambiguity in the Ezell Survey. In its oppositions to Siemens' motions for summary judgment and attorneys' fees, Quidel contends for the first time that an assay detects "TSI only" if possible interference from blocking antibodies can cause false positives (which Siemens' assay allegedly does), but not if the same interference can cause false negatives (which Quidel's assay indisputably does). But when Ezell asked physicians why they believed Siemens' assay is a "TSI only" assay, not one provided an explanation that came close to Quidel's newly-proffered definition. *See* Haas. Decl. Ex. 14 at 28-57. As such, the Ezell Survey provides no support for Quidel's litigation positions.

**C.  Ezell Did Not Disclose His Coding Methodology**

Finally, the Ezell Survey is flawed due to Ezell's inability to articulate how he translated respondents' open-ended answers into his ultimate conclusions, further compounding the Survey's bias. At his deposition, Ezell could not determine which respondents received which supposedly "false message," nor could he explain which messages he considered "false." Mot. 22. Exclusion is proper because Ezell did not provide a basis upon which "responses can be scored

1  consistently and accurately." *Louis Vuitton*, 525 F. Supp. 2d at 611.

2  In opposition, Quidel provides a long quote from Ezell's deposition testimony in place of any substantive argument or response. *See* Opp. 19-21. That testimony only reinforces Siemens' argument. ███████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████ *Id.* at 20. Further, Quidel concedes that Ezell's subjective coding practices led to under-reporting rates of deception in the control group, thus artificially increasing the net deception rate. Ezell classified twenty-three respondents in the control group as "indeterminable" rather than "misled." Haas Decl. Ex. 15 ¶ 113. But seventeen of those respondents should have been classified as having received a "false message" based on their responses to the close-ended questions. *Id.* Had Ezell properly coded those respondents, nearly 25% of *control* group respondents would have been classified as having been misled—which is reason enough to exclude the Ezell Survey. *See Acad. of Motion Pictures Arts & Scis. v Godaddy.com, Inc.*, 2013 U.S. Dist. LEXIS 198591, at *11-13 (C.D. Cal. June 21, 2013) (excluding a survey with control group that elicited an 18% rate of confusion).

Quidel recognizes that a survey should be excluded if the court has "no way of accurately discounting the survey data for any misunderstandings that might have arisen from" ambiguous questions and responses. Opp. 15 (quoting *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1247 (10th Cir. 2013)). The Ezell Survey is replete with such ambiguity, and should be excluded.

## **CONCLUSION**

For the foregoing reasons, Siemens respectfully requests that the Court grant its motion to exclude the survey, expert report, and testimony of Matthew G. Ezell.

DATE: May 31, 2019

Respectfully submitted,

PATTERSON BELKNAP WEBB & TYLER LLP

*/s/ Erik Haas*
Erik Haas
1133 Avenue of the Americas
New York, New York 10036
Phone: (212) 336-2000


/s/ *M.D. Scully*
GORDON & REES LLP
M.D. Scully (SBN 135853)
101 W. Broadway, Suite 2000
San Diego, CA 92101
mscully@gordonrees.com
Tel: (213) 270-7871

*Attorneys for Defendants Siemens Medical Solutions USA, Inc. and Siemens Healthcare Diagnostics Inc.*