# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUIDEL CORPORATION,<br><br>                      Plaintiff,<br><br>v.<br><br>SIEMENS MEDICAL SOLUTIONS USA, INC., *et al.*,<br><br>                      Defendants. | Case No. 16-cv-3059-BAS-AGS<br><br>**ORDER GRANTING PLAINTIFF'S SPECIAL MOTION TO STRIKE DEFENDANT'S COUNTERCLAIMS**<br><br>**[ECF No. 141]** |

Plaintiff Quidel Corporation filed a two-part Motion seeking to strike in part and/or dismiss in part Defendant Siemens Healthcare Diagnostics, Inc.'s counterclaims. The Court held oral argument on the Motion on September 17, 2019. For the reasons discussed below, the Court **GRANTS** Quidel's Motion to Strike.

**I.     Background**

Plaintiff Quidel and Defendants Siemens Healthcare and Siemens Medical Solutions USA, Inc. each manufacture and sell assays (blood tests) used for measuring thyroid stimulating antibodies that, among other things, can aid in the detection of Graves' disease. Quidel sells the Thyretain Bioreporter TSI Assay ("Thyretain"), and Defendants sell the IMMULITE 2000/2000 XPi TSI Assay ("IMMULITE").

Quidel brings suit against Defendants for Lanham Act false advertising, statutory unfair competition and false advertising, and intentional interference with prospective economic advantage. Quidel alleges Thyretain is intended "for the qualitative detection in serum of" thyroid-stimulating immunoglobins, or "TSI." Quidel alleges Thyretain "is the only commercially available assay that detects TSI only, as opposed to those that fail to differentiate between thyroid-stimulating and thyroid-blocking immunoglobins [also known as "TBI"]." (First Amended Complaint, "FAC," ECF No. 12, ¶ 13.) Assays that are unable to differentiate between TSI and TBI are called "TRAb" assays.

Defendants' product IMMULITE is intended to compete with Thyretain. (*Id.* ¶ 14.) Defendants advertised IMMULITE on their website as detecting TSI only. Quidel alleges Defendants failed to disclose that IMMULTE "also detects thyroid-blocking antibodies, which may lead to misdiagnosis." (*Id.* ¶ 15.) Therefore, Quidel alleges Defendants engaged in false advertising because IMMULITE does not detect TSI "only" but may also detect TBI. "[W]here blocking antibodies are present, the inability of the IMMULITE Assay to distinguish between blocking antibodies and stimulating antibodies can result in false positives, i.e., an erroneous Graves' diagnosis." (*Id.* ¶ 17.) Quidel raised these concerns with Defendants, and Defendants removed the term "only" from various marketing statements. (*Id.* ¶ 20.) However, Quidel alleges Defendants did nothing to correct the prior false statements and continues to describe IMMULITE in a false and misleading manner. (*Id.*)

Quidel alleges it has suffered damages from the statement that IMMULITE detects "TSI only." IMMULITE is less expensive and faster than Thyretain. (*Id.* ¶ 21.) By selling IMMULITE for less than Thyretain, Defendants are "promoting the ability of customers to capture more of the difference between Medicare reimbursement for a true TSI only assay (Thyretain) and the cost of the IMMULITE Assay (not a true TSI only assay)." (*Id.* ¶19.) Further, a laboratory that had previously purchased Thyretain switched to purchasing IMMULITE, "damaging

Plaintiff in the amount of approximately $250,000.00 per year." (*Id.* ¶ 22.) Quidel has attempted to "educate customers" on the differences between the two assays, but Quidel continues to suffer damages. (*Id.*) These damages and Defendants' market advantage resulting from the allegedly false advertising of IMMULITE are the basis for Quidel's suit.

Quidel's original complaint was brought against Defendant Siemens Medical Solutions USA, Inc. Siemens Medical moved to dismiss the complaint, and Quidel filed a timely first amended complaint. The amended complaint added Siemens Healthcare as a defendant. Both Defendants moved to dismiss the amended complaint, and the Court denied the motion. Defendants answered the complaint but later requested leave to file an amended answer and counterclaims. The Court granted the motion. Defendants filed an amended answer, and within the answer, asserted counterclaims on behalf of Siemens Healthcare. (ECF No. 124.)[1] The counterclaims are unfair competition, intentional interference with prospective economic relations, trade libel, and abuse of process. The counterclaims are the basis of the present Motion.

Quidel seeks to strike a portion of the counterclaims pursuant to California Code of Civil Procedure § 425.16, commonly known as the Anti-Strategic Lawsuits Against Public Participation ("Anti-SLAPP") law.

## II. Legal Standard

California's anti-SLAPP statute is intended to "provide a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1055–56 (2006). The Anti-SLAPP law, provides in relevant part:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the

---

[1] Siemens Healthcare is the only Defendant relevant for the analysis of the present Motion. Therefore, any reference herein to "Defendant" or "Siemens" is to Siemens Healthcare.

– 3 –

> United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16.[2]

Courts apply a two-part test to determine whether an action is subject to an anti-SLAPP special motion to strike. *Navellier v. Sletten*, 29 Cal. 4th 82, 85, 88 (2002). First, the moving party must establish that "the challenged cause of action is one arising from protected activity." *Id*. Once the party makes a threshold showing that the act in question is protected, the burden shifts to the non-moving party. To resist the special motion to strike, the non-moving party must establish "a probability of prevailing on the claim." *Id*. The level of proof the Court requires under this step is discussed *infra*.

### III. Analysis

#### A. <u>Timeliness of the Motion</u>

The parties address the timeliness of the present Motion only in passing footnotes, but the timeliness of an anti-SLAPP motion in federal court is an issue that deserves more than a footnote. Siemens notes the Motion was filed 17 days after Siemens filed its amended answer and counterclaims. ("Opp'n," ECF No. 157, at 14 n.10.) Siemens cites *Meredith v. Weilburg*, where the court held a response to an amended pleading must be filed within 14 days. No. 3:13-cv-277-RCJ-WGC, 2014 WL 3697111, at *3 (D. Nev. July 23, 2014) (citing Fed. R. Civ. P. 15(a)(3)). Siemens therefore argues Quidel's Motion is untimely. In response, Quidel merely distinguishes the facts of *Meredith* from those of this case. (Reply 6 n.1.)

The anti-SLAPP statute provides that the motion "may be filed within 60 days

---

[2] Although anti-SLAPP motions are usually filed by defendants seeking to strike complaints, they can also arise when plaintiffs seek to strike cross-complaints. *See* Cal. Civ. Proc. Code § 425.16(h). In "federal parlance," a "cross-complaint" is "a counterclaim." *Gorom v. Old Dominion Freight Line, Inc.*, No. 2:12–cv–08374–SVW, 2013 WL 195377, *1 (C.D. Cal. Jan. 17, 2013).

– 4 –

of the service of the complaint or, in the court's discretion, at any time upon terms it deems proper." Cal. Civ. Proc. Code § 425.16(f). But this 60-day deadline is a procedural rule under the *Erie* doctrine that can conflict with the Federal Rules of Civil Procedure. *See Sarver v. Chartier*, 813 F.3d 891, 900 (9th Cir. 2016) (following "our own rules of procedure" (i.e. Rule 56) rather than the anti-SLAPP timing rules).

"For purposes of the Federal Rules of Civil Procedure, a motion brought on anti-SLAPP grounds can either be analogous to a motion to dismiss or a motion for summary judgment." *Clifford v. Trump*, 339 F. Supp. 3d 915, 922 (C.D. Cal. 2018). Quidel's Motion is analogous to a motion to dismiss because Quidel moves to strike/dismiss the counterclaims based on legal arguments. In contrast, Quidel is not "providing alternate facts to challenge the allegations" in the counterclaims, so the motion is not analogous to a motion for summary judgment. *Id.* (citing *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018)).

A motion to dismiss must be filed within 21 days of service. Fed. R. Civ. P. 12(a). The present Motion to Strike was filed 17 days after service of the counterclaims, thus, the Motion is timely. The Court now turns to the merits of the Motion.

### B. Protected Activity

Quidel has the initial burden to establish its actions alleged in the counterclaims arise from protected activity. *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036 (1997). A "'cause of action . . . arising from' means simply that the [plaintiff's] act underlying the [defendant's] cause of action must *itself* have been an act in furtherance of the right of petition or free speech." *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002). The anti-SLAPP statute's "definitional focus" for this issue is not on the cause of action but rather on the "[plaintiff's] activity that gives rise to [its] asserted liability—and whether that activity constitutes protected speech." *Navellier*, 29 Cal. 4th at 92.

Siemens' criticism of Quidel's conduct begins well before this litigation began, and extends well beyond the filing of the complaint. Siemens alleges Quidel has "long engaged" in reimbursement fraud before Siemens entered the market. (Amended Answer and Counterclaims, "CC," ECF No. 124, at ¶ 3.) Then, once Siemens' IMMULITE assay became available, Quidel "peppered laboratories and physicians" with false information about the assays. (*Id.* ¶¶ 6, 7.) Quidel then "redoubled its efforts to disparage Siemens" and its assay "by bringing this action" and later by filing an amended complaint ("FAC"). (*Id.* ¶¶ 9, 10.) Quidel sent its complaint to one of the parties' customers and also made false allegations about Siemens in letters sent to "up to ten thousand physicians." (*Id.* ¶ 11.) Quidel also allegedly asserted untrue claims of false advertising in its initial disclosures and sworn interrogatory responses. (*Id.* ¶ 62.)

But Quidel does not assert that all of the above actions arise from protected activity. (Mot. at 11.) Quidel alleges the following conduct arises from protected activity:

> (a) Quidel's commencement and prosecution of this case; (b) allegations contained within Quidel's original Complaint and the FAC; (c) statements made in Quidel's initial disclosures and interrogatory responses; (d) republication of Quidel's original Complaint and the FAC to non-participating third parties; and (e) statements made to non-participating third parties about this case.

(*Id.* at 3.)

The Court addresses each category of conduct to determine whether it is protected activity.[3]

---

[3] Siemens dedicates one paragraph to arguing that Quidel's conduct does not arise from protected activity. (Opp'n at 17–18.) Siemens argues Quidel's wrongful activity began before it filed its pleading, and not the other way around. (*Id.* at 18.) But the language "arises from" does not mean that the Court focuses on the chronological history of events. "A claim arises from protected activity when that activity *underlies* or *forms the basis* for the claim." *Park v. Bd. of Trustees of Cal. State Univ.*, 2 Cal. 5th 1057, 1062 (2017) (emphasis added). Quidel is not arguing that its alleged wrongful activity that occurred before it filed the complaint is protected activity. Quidel

### 1. Quidel's commencement and prosecution of this case and the allegations contained within Quidel's complaint and FAC

Protected activity includes "any written or oral statement or writing made before a . . . judicial proceeding." Cal. Civ. Proc. Code § 415.16(e)(1). Quidel's actions in filing its complaint, amended complaint, and other filings with this Court are protected activities. *See Rusheen*, 37 Cal. 4th at 1056 (holding protected activity includes "communicative conduct such as the filing, funding, and prosecution of a civil action"); *Navellier*, 29 Cal. 4th at 90 (holding a claim for relief filed in federal district court is protected activity). The allegations within the complaints also constitute protected speech.

### 2. Statements made in Quidel's initial disclosures and interrogatory responses

The counterclaims also assert that Quidel falsely asserted in its initial disclosures and sworn interrogatory responses that a laboratory decided to purchase IMMULITE over Thyretain because of Siemens' advertising. (CC ¶ 62.)

As noted above, any written statement made before a judicial proceeding constitutes protected activity. Cal. Civ. Proc. Code § 415.16(e)(1). Protected activity also includes any writing "made in connection with an issue under consideration or review by a . . . judicial body." *Id.* at subsection (e)(2). Section 425.16 is "construed broadly" to protect litigants' "freedom of access to courts without the fear of being harassed subsequently by derivative tort actions." *Healy v. Tuscany Hills Landscape & Rec. Corp.*, 137 Cal. App. 4th 1, 5 (2006). Discovery responses have been determined to be protected activity because they are made in litigation and directed to persons having an interest in that proceeding. *Crossroads Inve'rs, L.P. v. Fed. Nat'l Mortg. Ass'n*, 13 Cal. App. 5th 757, 778–79 (2017).

---

moves to strike only some of the allegations, and argues its conduct arose only in part from protected activity. Thus, the Court only addresses the conduct that Quidel asserts arose from protected activity.

The Court finds this discovery-related conduct is protected activity pursuant to California Code of Civil Procedure § 415.16(e)(2) as writing made in connection with this litigation. The initial disclosures and responses were made during discovery in this action and were directed to the defendant in the case, who is a party having an interest in this proceeding. Therefore, the conduct is protected.

    3. <u>Republication of Quidel's complaint and FAC to non-participating third parties and statements made to non-participating third parties about the case</u>

Various counterclaims assert that Quidel sent presentations and letters to customers regarding the two assays and also sent a copy of the complaint to one of the parties' largest customers. (CC ¶¶ 6, 11.) Quidel argues this constitutes protected activity. (Mot. at 12.)

Protected activity includes conduct in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue." *Fremont*, 198 Cal. App. 4th at 1167 (citing Cal. Civ. Pro. § 425.16(b)(1)). This includes a writing made "in connection with an issue under consideration" by a court. Cal. Civ. Pro. § 425.16(e)(2). "A statement is 'in connection with' an issue under consideration by a court in a judicial proceeding . . . if it relates to a substantive issue in the proceeding and is directed to a person having some interest in the proceeding." *Id.*; *see also Graham-Sult v. Clainos*, 756 F.3d 724, 740 (9th Cir. 2014) ("Communicating about the subject matter of litigation to a person with an interest in the litigation is a protected activity." (citing *Fremont*, 198 Cal. App. 4th at 1167)).

Quidel broadly argues, with no explanation, that the physicians and customers to whom Quidel sent the complaint have "some interest in this proceeding" and therefore communication directed at them is protected. (Mot. at 12.) In *Youngevity International Corp. v. Smith*, Youngevity issued a press release to a trade publication announcing the initiation of the litigation. No. 16-cv-704-BTM-JLB, 2017 WL 6389776, at *3 (S.D. Cal. Dec. 13, 2017), *aff'd in part, rev'd in part, dismissed in*

– 8 –

*part sub nom. Youngevity Int'l Corp. v. Andreoli*, 749 F. App'x 634 (9th Cir. 2019). Youngevity was "a publicly traded corporation and the press release was sent to a trade publication and read by individuals in the multi-level marketing community." *Id.* Judge Moskowitz found the press release constituted protected speech because it was made "in connection with" the litigation and targeted at those with "some interest in the proceeding." On appeal, the Ninth Circuit did not specifically address what constitutes having "some interest in the proceeding." *Youngevity Int'l Corp. v. Smith*, 749 F. App'x 634, 635 (9th Cir. 2019). But the panel found that the actions of republishing the complaint and disseminating a press release to distributors and the marketing community constituted protected speech.

Here, Quidel sent the complaint and its allegations regarding the parties' products to customers and clients. The Court finds that the customers and those buying products from a pharmaceutical company have at least "some" interest in the litigation regarding those products. For example, if the Court were to determine that a product was falsely advertised, the purchasers of that product would be interested in such a finding. Therefore, Quidel's actions of republishing the complaint and sending letters to third parties regarding the subject of this litigation are protected activities.

In sum, all of the conduct presented in the Motion to Strike is protected activity. Normally, the Court would now turn to the second step in the anti-SLAPP analysis. Once a court determines conduct is protected activity, this means it is the proper subject of a motion to strike, and the moving party must next prove they are likely to prevail on their claims. However, Siemens argues that even if the conduct is protected activity, Siemens is exempt from anti-SLAPP coverage under an exception.

C. **Commercial Speech Exception**

Even if the claims are partially based on allegations of Quidel's protected activity, Siemens Healthcare's claims could be exempt under the statutory

– 9 –

commercial speech exemption to the anti-SLAPP statute.

The commercial speech exception, codified at California Code of Civil Procedure § 425.17, removes from anti-SLAPP coverage "disputes that are purely commercial." *Taheri Law Grp. v. Evans*, 160 Cal. App. 4th 482, 491 (2008). The purpose of the statute is to "immunize comparative advertising by retailers from the special motion to strike statute." *Brill Media Co., LLC v. TCW Grp., LLC*, 132 Cal. App. 4th 324, 348 (2005) (Mosk, J. dissenting). For the exemption to apply, Siemens Healthcare must demonstrate: (1) that Quidel is "primarily engaged in the business of selling or leasing goods or services"; (2) that the challenged claims arise "from a statement or conduct by [Quidel] consisting of representations of fact about [Quidel's] or a business competitor's business operations, goods, or services"; (3) that Quidel's statement was made "for the purpose of obtaining approval for, promoting, or securing sales or leases of" its goods or services or "in the course of delivering" the goods or services; and (4) that Quidel's intended audience was "an actual or potential buyer or customer[.]" *See Weiland Sliding Doors & Windows, Inc. v. Panda Windows & Doors, LLC*, 814 F. Supp. 2d 1033, 1036–37 (S.D. Cal. 2011); *Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 30 (2010). The exception is to be narrowly construed. *Simpson*, 49 Cal. 4th at 22. Siemens has the burden to prove the exception applies. *Id.* at 26.

Siemens argues it has satisfied the four conditions, namely: (1) Quidel is primarily engaged in the business of selling a medical device; (2) the counterclaims arise from Quidel's representations regarding Thyretain's and IMMULITE's performance and quality; (3) Quidel's communication was directed at laboratory customers and laboratories to promote the purchase and use of Thyretain; and (4) Quidel's audience was actual or potential laboratory customers and the physician community. (Opp'n at 14–15.)

Quidel disagrees and disputes the third and fourth element. Quidel argues the exception does not apply to certain actions in this case (such as filing of the

complaint, amended complaint, initial disclosures, and interrogatory responses) because the statements were not made "for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, Quidel's goods or services or in the course of delivering Quidel's goods or services, and the intended audience was the Court and Siemens." ("Reply," ECF No. 181, at 5.)

Clearly, there is a distinction between the various forms of conduct alleged in the counterclaims. It appears to be unsettled as to whether the commercial speech exception can be applied to <u>portions</u> of a mixed cause of action. *See* Cal. Civ. Proc. Code § 425.17(c) (the anti-SLAPP statute does not apply to certain commercial "cause[s] of action"). But the California Supreme Court in *Baral* determined that the Legislature, in using the term "cause of action" in section 425.16, "had in mind *allegations of protected activity that are asserted as grounds for relief*." 1 Cal. 5th at 395. The Legislature intended to indicate "that *particular* alleged acts giving rise to a claim of relief may be the object of an anti-SLAPP motion." *Id.* The Supreme Court therefore found it appropriate to look at allegations within a cause of action. This Court finds it most logical that the same interpretation should be applied to the use of the phrase "cause of action" in section 425.17(c) and will review each allegation of protected activity to determine whether it falls into the exception.

The Court first addresses the conduct of Quidel sending copies of the complaint and letters to laboratories and physicians. A similar situation arose in *Sharper Image Corp. v. Target Corp.*, 425 F. Supp. 2d 1056 (N.D. Cal. 2006). There, the plaintiff sent emails to retailers advising them of the lawsuit and asking them not to carry the defendant's product. The purpose of the letters was to make sure the retailers were aware of the litigation and to improve the plaintiff's commercial relationship with the retailers. *Id.* at 1075–76. The plaintiff moved to strike the defendant's counterclaims based on the conduct of sending the letters. The court found the commercial speech exception applied to the conduct and denied the motion to strike the claim. *Id.* at 1077. In contrast, in *Contemporary Services Corp. v. Staff*

*Pro Inc.*, 152 Cal. App. 4th 1043, 1054 (2007), the court found that plaintiff's act of sending an email summarizing the litigation did not fall under the exception because the email did not discuss the parties' goods or services and was not sent to promote goods, but was sent to provide the recipient with the plaintiff's allegations. *Id.* The court reasoned the plaintiff is not "in the 'business' of litigating clams" and the email only discussed the litigation, not the goods of the plaintiff's business. *Id.*; *see* Cal. Civ. Proc. Code § 415.17(c) (for the exception to apply, the statement must consist of "representations of fact about that person's or a business competitor's business operations").

This case is more similar to *Sharper Image* than to *Contemporary Services*. Quidel sending its complaint and letters to physicians and laboratories (who are customers) was done to promote the sale of Thyretain and provide Quidel's opinion regarding the competitive product IMMULITE. The letter to LabCorp provides that Quidel filed a complaint against Siemens and that the complaint alleges that Siemens has falsely advertised IMMULITE for various reasons. (ECF No. 157-1, at 5.)[4] The purpose of the letter was to encourage the clients not to carry or promote IMMULITE and therefore to improve Quidel's relationship and business with the clients. The conduct alleged in the counterclaims that Quidel republished its complaint and FAC to non-participating third parties and made statements to non-participating third parties falls under the exception of section 425.17, and therefore does not fall under anti-SLAPP coverage.

As to the remaining conduct (the filing of the complaint and making certain allegations in the complaint, the initial disclosures, and the interrogatory responses), the Court agrees with Quidel that the exception does not apply. Siemens has not met

---

[4] The letter is attached to a declaration by defense counsel who declares that the attachment is a true and correct copy of a letter produced by Quidel during discovery. (ECF No. 157-1, ¶ 3.) In analyzing anti-SLAPP motions, "the court shall consider the pleadings, and supporting and opposing affidavits supporting the facts upon which the liability or defense is based." Cal. Civ. Proc. Code § 4251.6(b)(2). Therefore, the Court considers the letter.

its burden in establishing this conduct was done for the commercial purpose of promoting Quidel's goods. Instead it was done to commence a lawsuit against Siemens and to proceed through litigation. Further, Siemens has not established that the intended audience of the litigation activity was potential customers. The intended audience of the complaint and discovery conduct was the Court or Siemens. *See Turk Beckstoffer Wines LLC v. Ultimate Distribs., Inc.*, 682 F. Supp. 2d 1003, 1012 (N.D. Cal. 2010) (finding the act of filing a lawsuit does not fall into the § 425.17(c) exception). Therefore, the exception does not fully bar the anti-SLAPP suit, and the relief sought in the counterclaims is based partially on allegations arising from protected activity.

### D. Mixed Causes of Action

As noted, Quidel does not move to strike the counterclaims in their entirety. In fact, Quidel specifically moves to strike particular allegations within the counterclaims. Thus, Quidel seems to admit that portions of the counterclaims are not subject to strike. And the Court finds above that some allegations within the counterclaims arise from protected activity. Although Siemens does not bring up the issue in its briefing, the Court finds it important to analyze how to proceed in such a case.

The anti-SLAPP statute allows for a special motion to strike against any "cause of action" without further defining the term. Cal. Civ. Proc. Code § 425.16(b)(1). The issue of what to do when a claim is "mixed"—meaning when it combines allegations of protected activity with those of unprotected activity—was taken up by the California Supreme Court. *Baral v. Schnitt*, 1 Cal. 5th 376, 381 (2016). The court concluded that courts reviewing anti-SLAPP motions were to rule on "specific claims of protected activity" rather than let litigants survive a motion to strike simply because they pled a mixture of protected and unprotected activity. *Id.* at 393. At the first step of the anti-SLAPP analysis, the moving party must identify all allegations of protected activity and the claims of relief supported by the allegations. *Id.*

– 13 –

Allegations of unprotected activity are disregarded.

If the court determines relief is sought based on allegations arising from protected activity, then the court turns to the second step. *Id.* The nonmoving party has the burden to "demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Id.* If the party's showing is not sufficient to sustain a favorable judgment, "[a]llegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." *Id.* at 396; *see Youngevity Int'l Corp v. Andreoli*, 749 F. App'x 634, 635 (9th Cir. 2019) ("[W]e separately consider each statement that [plaintiff] argues is protected.").

At oral argument, the Court asked the Parties how it should proceed at this stage. Specifically, the Court finds that each cause of action contains allegations of protected activity, but also allegations of unprotected activity. Although the argument is not mentioned in its briefing, Defendant suggested the Court find that the protected activity is "merely incidental" or "collateral" to the claims as a whole. *See Baral*, 1 Cal. 5th at 394 (holding assertions that are "merely incidental" or "collateral" are not subject to an anti-SLAPP motion). Defendant argued that the allegations of protected activity "merely provide context" to the claims and therefore nothing should be stricken. The Court disagrees. A large basis of the counterclaims is the allegations that Plaintiff filed complaints, made certain allegations in the complaints, and made disparaging and false remarks in discovery and in disclosures. The Court cannot say that such allegations are collateral to the claims as a whole. While it is true that the counterclaims allege Plaintiff engaged in unlawful activity that occurred before the litigation began, that does not mean the litigation activity is collateral to the claims as a whole. Instead, the allegations of protected activity are an important part of the counterclaims, and the claims "rest on" this protected speech. *See Hylton v. Frank E. Rogozienski, Inc.*, 177 Cal. App. 4th 1264, 1272 (2009).

Therefore, the Court cannot ignore the allegations of protected activity on this basis, and now turns to the second prong of the anti-SLAPP test. The Court will analyze whether Defendant can "demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." *Baral*, 1 Cal. 5th at 392 (holding a claim "supported by allegations of protected and unprotected activity in a single cause of action," cannot "escape[] review if the [non-moving party] shows a probability of prevailing on the allegations that are *not* covered by the anti-SLAPP statute").

### E. <u>Probability of Prevailing on the Claims</u>

Because the Court has found that all four claims are based in part on allegations arising from protected activity, the Court must now determine if the "challenged claim[s] based on protected activity [are] legally sufficient and factually substantiated." *Id.* at 396.

In this second step, Siemens must show "a reasonable probability" of prevailing on the challenged claims. *Metabolife Intern.*, 264 F.3d at 840. The level of proof that California anti-SLAPP law and the Federal Rules of Civil Procedure require for this step has been disputed. But "if there is a contest between a state procedural rule and the federal rules, the federal rules of procedure will prevail." *Planned Parenthood Fed'n of Am.*, 890 F.3d at 834 (citing *Hanna v. Plumer*, 380 U.S. 460 (1965)). Therefore, the Court follows the holding from the Ninth Circuit:

> When an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated. And, on the other hand, when an anti-SLAPP motion to strike challenges the factual sufficiency of a claim, then the Federal Rule of Civil Procedure 56 standard will apply.

*Id.* Quidel challenges the legal sufficiency of the counterclaims in arguing that the claims are barred by the litigation privilege and that Siemens fails to state a claim. (Mot. at 13.)

### 1. First Claim: Unlawful, Unfair, and Fraudulent Trade Practices

Quidel argues Siemens cannot prevail on this claim because the litigation privilege bars the claim. The litigation privilege "may present a substantive defense [the non-moving party] must overcome to demonstrate a probability of prevailing" in the second step of the anti-SLAPP analysis. *Flatley v. Mauro*, 39 Cal. 4th 299, 323 (2006).

The purpose of California's litigation privilege "is to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Silberg v. Anderson*, 50 Cal.3d 205 (1990). The litigation privilege applies to any communication "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action." *Mansell v. Otto*, 108 Cal. App. 4th 265, 133 (2003). Moreover, "[a]ny doubt about whether the privilege applies is resolved in favor of applying it." *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002).

The privilege protects "any publication required or permitted by law in the course of judicial proceedings to achieve the objects of the litigation." *Silberg*, 50 Cal. 3d at 212. Even if it is alleged that a party "made misrepresentations in the complaint, false statements in sworn discovery responses . . . and false allegations[,]" the conduct is all covered by the litigation privilege. *Butler v. Resurgence Fin., LLC*, 521 F. Supp. 2d 1093, 1095 (C.D. Cal. 2007). Plaintiff's actions of filing of a complaint and other documents within a litigation are protected by the litigation privilege. The conduct is protected activity, and because it falls under the litigation privilege, Siemens has not shown it has a reasonable probability of prevailing on this claim.

### 2. Second Claim: Intentional Interference with Prospective Economic Relations

The elements of intentional interference with prospective economic relations

under California law are: (1) an economic relationship between the plaintiff and another containing a probability of future economic benefit, (2) knowledge by the defendant of the existence of the relationship, (3) intentional acts by defendant designed to disrupt the relationship, (4) actual disruption of the relationship, and (5) damages to the plaintiff proximately caused by the acts of the defendant. *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 389 (1995).

Siemens alleges Quidel committed this tort by inducing Siemens' prospective and existing customers to sever their business relationships with Siemens. (CC ¶ 81.) Quidel did so by engaging in acts protected by the litigation privilege. For the same reasons as above, this claim is barred by the litigation privilege. Siemens has not shown it has a reasonable probability of prevailing on this claim.

### 3. Third Claim: Trade Libel

California law defines trade libel as "an intentional disparagement of the quality of property [or a product], which results in pecuniary damage. *Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964). The elements of trade libel are (1) a false publication, (2) which induces others not to deal with the party, and (3) special damages. *Aetna Cas. & Surety Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988).

In its trade label claim, Siemens alleges "Quidel has published in writing false statements identifying Siemens that are disparaging to Siemens and the IMMULITE TSI assay" and "Quidel knew that their [sic] published statements were false, or acted in reckless disregard or negligence of the truth or falsity of the statements." (CC ¶¶ 84–85).) For the elements of trade libel, Siemens has alleged Quidel's statements are false, were intended to encourage purchase of Quidel's product over Siemens' product, and Siemens suffered damages of legal fees, lost sales and customers, and loss of reputation and goodwill. (CC ¶¶ 12, 70–74, 87.) Quidel argues Siemens has not adequately alleged special damages. Rule 9(g) establishes that special damages must be specifically stated. Fed. R. Civ. P. 9(g).

Siemens cites *Swiss America Trading Corp. v. Regal Assets, LLC*, No. CV 14-4960 DDP (ASx), 2015 WL 631569, at *3 (C.D. Cal. Feb. 13, 2015), in arguing it has adequately alleged special damages. There, the court found the defendant alleged special damages when it alleged lost market share as the result of false online reviews. The court reasoned that the party had pled its sales depend upon word of mouth, so a false online review was "particularly important" and caused damages. The *Swiss America* court appeared to accept the defendant's sparse allegations in finding defendant had sufficiently shown special damages. But the breadth of cases require much more.

In *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14-3954 DDP (MANx), 2014 WL 6892141, at *4 (C.D. Cal. Nov. 5, 2014), the plaintiffs alleged special damages by alleging they suffered "general statements of economic loss" and it requested $3 million total for all causes of action. The court held "to recover damages based on general business loss, Plaintiffs 'should have alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication[.]'" *Id.* (quoting *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998)). Because the plaintiffs had only generally alleged "lost sales, market share, and customer goodwill," they had not adequately alleged special damages for trade libel. *Id.*; *see also Franklin Fueling Sys., Inc. v. Veeder-Root Co.*, No. S-09-580 FCD/JFM, 2009 WL 2462505, at *5 (E.D. Cal. Aug. 11, 2009). Further, courts have held if the plaintiff alleges lost sales, it must "identify particular customers and transactions of which it was deprived as a result of the libel." *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 109 (2004).

Here, Siemens only broadly alleges that the "value of [its] assay, clinical reputation, brand[,]" and goodwill will suffer immeasurable damage from the false statements. (CC ¶¶ 12, 70–74.) Siemens alleges "lost sales" and "loss of customers"

without providing any further detail. (*Id.* ¶¶ 79, 87.) As evidenced by the above case law, this is insufficient to allege special damages. Siemens has not shown it has a reasonable probability of prevailing on this claim.

### 4. Fourth Claim: Abuse of Process

The California abuse of process tort has two elements: "(1) an ulterior motive; and (2) a willful act in the use of process not proper in the regular conduct of the proceedings." *Drum v. Bleau, Fox & Assocs.*, 107 Cal. App. 4th 1009, 132 (Ct. App. 2003). Simply filing or maintaining a lawsuit—even with an improper motive—is not actionable. *Silver v. Gold*, 211 Cal. App. 3d 17 (Ct. App. 1989). The tort must involve a misuse of the power of the court, or "an act done under the authority of the court for the purpose of perpetrating an injustice." *Younger v. Solomon*, 38 Cal. App. 3d 289, 297 (1974). There must be "an improper act outside the scope of judicial proceedings[,]" *Carlock v. RMP Fin.*, No. 03-cv-688 W (AJB), 2003 WL 24207625, at *2 (S.D. Cal. Aug. 5, 2003), because "maintenance of a lawsuit . . . is not a proper basis for an abuse of process action." *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157, 1168 (1986).

Siemens clearly believes Quidel filed this lawsuit solely to deceive customers and injure Siemens. (CC ¶ 90.) But filing a lawsuit and engaging in litigation is not an "abuse" of the process, even though Siemens claims Quidel's sole purpose in doing so was to continue its ongoing disparagement scheme against Siemens. Siemens has only alleged that Quidel has used litigation for an improper purpose, and this does not show abuse of process. Therefore, Siemens has not shown it has a reasonable probability of prevailing on this claim.

## IV. Conclusion

The Court finds that all four counterclaims are based in part on allegations of protected activity. And the Court finds that Siemens has not met its burden in establishing it will prevail on the merits of any of the counterclaims. Therefore, the

Court **GRANTS** Quidel's Motion to Strike.[5]

Siemens is granted leave to amend and may file new counterclaims omitting the stricken material. *See Verizon Delaware, Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004) ("[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed. R. Civ. P. 15(a)'s policy favoring liberal amendment"). Siemens may not add any new counterclaims or allegations, and the only change it may make is to excise the allegations of protected activity the Court discusses in this Order. Siemens may file the new counterclaims <u>within fourteen (14) days of the date of this Order.</u>

Next, Quidel's motion for summary judgment as to Siemens' counterclaims is now moot. (*See* ECF No. 148.) The Court **TERMINATES** the motion and grants Quidel leave to re-file the motion <u>within thirty (30) days of the date when Defendant files new counterclaims.</u>

Finally, because the Court grants the motion to strike, Quidel may file a motion for attorney's fees and costs. *See* Cal. Civ. Proc. Code § 425.16(c)(1) (If the movant prevails on a special motion to strike, it is "entitled to recover [its] attorney's fees and costs"). The motion is to be referred to Magistrate Judge Schopler.

**IT IS SO ORDERED.**

DATED: September 27, 2019

Hon. Cynthia Bashant
United States District Judge

---

[5] Because the Court grants the Motion to Strike, it does not address Quidel's alternative request to dismiss the counterclaims under Federal Rule of Civil Procedure 12(b)(6).