T. KEVIN ROOSEVELT, SBN 205485
*kroosevelt@ftrlfirm.com*
JARED M. TOFFER, SBN 223139
*jtoffer@ftrlfirm.com*
LINDSAY A. ARAGON, SBN 254537
*laragon@ftrlfirm.com*
**FINLAYSON TOFFER
ROOSEVELT & LILLY LLP**
15615 Alton Parkway, Suite 250
Irvine, CA 92618
Telephone:949.759.3810
Facsimile: 949.759.3812

Attorneys for Plaintiff
QUIDEL CORPORATION

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUIDEL CORPORATION, a Delaware corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>SIEMENS MEDICAL SOLUTIONS USA, INC., a Delaware corporation, SIEMENS HEALTHCARE DIAGNOSTICS, INC., a California corporation, and DOES 1-50 INCLUSIVE,<br><br>        Defendants. | CASE NO. 3:16-cv-3059-BAS-AGS<br><br>Judge: Hon. Cynthia A. Bashant<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR (1) SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AS TO ALL OF DEFENDANT SIEMENS HEALTHCARE DIAGNOSTICS INC.'S CLAIMS; AND (2) PARTIAL SUMMARY JUDGMENT AS TO DEFENDANTS' UNCLEAN HANDS AFFIRMATIVE DEFENSE**<br><br>**Hearing:**<br>Date:      December 16, 2019<br>Time:     N/A<br>Courtroom: 4B<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>Filing Date: December 19, 2016<br>Final Pretrial Conference: Vacated |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     PROCEDURAL HISTORY ................................................................................. 2

        A.      Quidel's Original and First Amended Complaint and Siemens
                Healthcare's Original Counterclaims. ........................................................ 2

        B.      Order Granting Quidel's Special Motion to Strike Siemens
                Healthcare's Original Counterclaims. ........................................................ 2

        C.      Defendants' Second Amended Answer and Siemens
                Healthcare's Amended Counterclaims. ...................................................... 3

                1.      Siemens Healthcare's Three Claims for Relief ............................... 3

                2.      Defendants' Unclean Hands Affirmative Defense ........................... 4

III.    ARGUMENT ........................................................................................................ 4

        A.      Quidel Is Entitled To Summary Judgment On All Of Siemens
                Healthcare's Amended Counterclaims Or, Alternatively, Partial
                Summary Judgment. ................................................................................... 4

                1.      Summary Judgment Standards. ........................................................ 4

                2.      Trade Libel – Quidel is Entitled to Judgment in Its Favor
                        Because Siemens Healthcare (A) Failed to Even Allege
                        Special Damages and  (B) Cannot Prove Special
                        Damages ............................................................................................ 6

                3.      Abuse of Process – Quidel is Entitled to Judgment in Its
                        Favor Because Its Alleged Conduct Is Protected by the
                        Litigation Privilege. ....................................................................... 10

                4.      Unfair Competition – Quidel is Entitled to Judgment in
                        Its Favor Because Siemens Healthcare Does Not Have
                        Standing to Pursue A UCL Claim, and the Claim
                        Otherwise Fails. ............................................................................. 14

                5.      Siemens Healthcare's Claims are Barred, at Least in Part,
                        by Statutes of Limitation ............................................................... 17

i

B.    Quidel Is Entitled To Partial Summary Judgment As To Defendants' Unclean Hands Affirmative Defense. ................................... 19

    1.    The Unclean Hands Doctrine .......................................... 19

    2.    Defendants Cannot Prove Essential Elements of Their Unclean Hands Affirmative Defense. ........................... 19

IV.    CONCLUSION ................................................................. 22

# <u>TABE OF AUTHORITIES</u>

**Cases**

*Abraham v. Lancaster Cmty. Hosp.*
 217 Cal. App. 3d 796 (1990) ............................................................... 12

*Aetna Cas. & Surety Co. v. Centennial Ins. Co.*
 838 F.2d 346 (9th Cir. 1988) ............................................................ 6, 8

*American Title Ins. Co. v. Lacelaw Corp.*
 861 F.2d 224 (9th Cir. 1988) ................................................................ 5

*Anderson v. Liberty Lobby, Inc.*
 477 U.S. 242 (1986)............................................................................. 5

*Californians for Disability Rights v. Mervyn's, LLC*
 39 Cal. 4th 223 (2006) ....................................................................... 15

*Cantu v. Resolution Tr. Corp.*
 4 Cal. App. 4th 857 (1992) ................................................................. 17

*Carlock v. RMP Fin.*
 2003 WL 24207625 (S.D. Cal. Aug. 5, 2003) .................................... 11

*Celotex Corp. v. Catrett*
 477 U.S. 317 (1986)............................................................................. 5

*Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*
 2018 WL 3618243 (S.D. Cal. July 30, 2018) ..................................... 22

*Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans City*
 383 F.3d 110 (3d Cir. 2004) ............................................................... 20

*Eldridge v. Johndrow*
 345 P.3d 553 (Utah 2015) ................................................................... 13

*Emco, Inc. v. Obst*
 2004 WL 1737355 (C.D. Cal. May 7, 2004) ...................................... 19

*Erlich v. Etner*
 224 Cal. App. 2d 69 (1964) ............................................................. 6, 10

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*
 826 F.2d 837 (9th Cir. 1987) .............................................................. 19

*Gaspar Physical Therapy, Inc. v. Roberts*
 2018 U.S. Dist. LEXIS 185860 (S.D. Cal. Oct. 29, 2018)....................7

*Guess, Inc. v. Superior Ct.*
 176 Cal. App. 3d 473 (1986) ........................................................... 8, 17

*Hall v. Sea World Entm't, Inc.*
 2016 WL 4595948 (S.D. Cal May 13, 2016)
 747 F. App'x 449 (9th Cir. 2018) ....................................................... 16

*Hall v. Wright*
 240 F.2d 787 (9th Cir. 1957) .............................................................. 19

*Hardisty v. Moore*
 2012 U.S. Dist. LEXIS 61465 (S.D. Cal. May 2, 2012) ...................... 13

*Healy v. Tuscany Hills Landscape & Recreation Corp.*
 137 Cal. App. 4th 1 (2006) ................................................................. 12

*Hoffman v. Impact Confections, Inc.*
544 F. Supp. 2d 1121 (S.D. Cal. 2008) ................................................ 10

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*
2014 WL 6892141 (C.D. Cal. Nov. 5, 2014) ........................................ 6

*In re Actimmune Mktg. Litig.*
2010 WL 3463491 (N.D. Cal. Sept. 1, 2010)
464 F. App'x 651 (9th Cir. 2011) ...................................................... 16

*Ingels v. Westwood One Broad. Servs., Inc.*
129 Cal. App. 4th 1050 (2005) .......................................................... 16

*Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*
12 F. Supp. 2d 1035 (C.D. Cal. 1998) .................................................. 7

*Japan Telecom, Inc. v. Japan Telecom Am. Inc.*
287 F.3d 866 (9th Cir. 2002) .............................................................. 19

*Kashian v. Harriman*
98 Cal. App. 4th 892 (2002) .............................................................. 12

*Kendall-Jackson Winery, Ltd. v. Superior Ct.*
76 Cal. App. 4th 970 (1999) .............................................................. 19

*Kwikset Corp. v. Superior Court*
51 Cal. 4th 310 (2011) ...................................................................... 15

*Leigh Furniture & Carpet Co. v. Isom*
657 P.2d 293 (Utah 1982) .................................................................. 13

*Leonardini v. Shell Oil, Co.*
216 Cal. App. 3d 547 (1989) .......................................................... 6, 9

*Madrid v. Perot Sys. Corp.*
130 Cal. App. 4th 440 (2005) ....................................................... 14, 17

*Mann v. Quality Old Time Serv., Inc.*
120 Cal. App. 4th 90 (2004) ................................................................ 7

*Mansell v. Otto*
108 Cal. App. 4th 265 (2003) .............................................................. 12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
475 U.S. 574 (1986) .......................................................................... 5

*McKell v. Wash. Mut., Inc.*
142 Cal. App. 4th 1457 (2006) ............................................................ 14

*Merisant Co. v. McNeil Nutritionals, LLC*
515 F. Supp. 2d 509 (E.D. Pa. 2007) .................................................. 20

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*
210 F.3d 1099 (9th Cir. 2000) ............................................................ 5

*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*
42 Cal. 3d 1157 (1986) ...................................................................... 11

*Partnoy v. Shelley*
277 F. Supp. 2d 1064 (S.D. Cal. 2003) ................................................ 8

*Polygram Records, Inc. v. Superior Ct.*
170 Cal. App. 3d 543 (1985) .............................................................. 8

*Pom Wonderful LLC v. Welch Foods, Inc.*
737 F. Supp. 2d 1105 (C.D. Cal. 2010) ........................................ 19, 20

iv

*Precision Co. v. Automotive Co.*
   324 U.S. 806 (1945) ............................................................................ 19

*Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*
   290 F.3d 1055 (9th Cir. 2002) ......................................................... 17

*Republic Molding Corp. v. B.W. Photo Utils.*
   319 F.2d 347 (9th Cir. 1963) ........................................................... 20

*Rusheen v. Cohen*
   37 Cal. 4th 1048, 1056 (2006) ......................................................... 13

*Sicor Ltd. v. Cetus Corp.*
   51 F.3d 848 (9th Cir. 1995) ................................................................ 5

*Silberg v. Anderson*
   50 Cal. 3d 205 (1990) ...................................................................... 11

*Silver v. Gold*
   211 Cal. App. 3d 17 (1989) .............................................................. 11

*TrafficSchool.com, Inc. v. Edriver, Inc.*
   633 F. Supp. 2d 1063 (C.D. Cal. 2008) .......................................... 21

*Wonderful LLC v. Welch Foods, Inc.*
   737 F. Supp. 2d 1105 (C.D. Cal. 2010) .......................................... 21

*Younger v. Solomon*
   38 Cal. App. 3d 289 (1974) .............................................................. 11

*Youngevity Int'l Corp. v. Andreoli*
   749 F. App'x 634 (9th Cir. Jan. 24, 2019) ..................................... 12

*Youngevity Int'l Corp. v. Smith*
   2017 WL 6389776 (S.D. Cal. Dec. 13, 2017) .................................. 9

*Youngevity Int'l v. Smith*
   350 F. Supp. 3d 919 (S.D. Cal. 2018) .............................................. 4

**Statutes**

31 U.S.C. § 3729 ...................................................................................... 15

31 U.S.C. § 3729-33 ................................................................................ 16

Cal. Bus. & Prof. Code § 17200 ..................................................... 14, 17

Cal. Bus. & Prof. Code § 17203 .......................................................... 14

Cal. Bus. & Prof. Code § 17204 .......................................................... 15

Cal. Bus. & Prof. Code § 17208 .......................................................... 17

Cal. Civ. Code § 47(b) .................................................................. 11, 12, 13

Cal. Civ. Code § 47(b)(2) ............................................................... 11, 13

Cal. Civ. Code § 45 .................................................................................. 7

Cal. Civ. Proc. Code § 339(1) ....................................................... 17, 18

Cal. Civ. Proc. Code § 340(3) ....................................................... 17, 18

Cal. Gov't Code § 12651 ....................................................................... 15

Fed. R. Civ. P. 9(g) .................................................................................. 6

Fed. R. Civ. P. 12(c) ................................................................................ 8

Fed. R. Civ. P. 26(a)(1)(A)(iii) ..................................................... 10

Fed. R. Civ. P. 56(a) ................................................................... 4

Fed. R. Civ. P. 56(g) ............................................................... 6, 13

**Other Authorities**

6 Cal.Jur.3d Assault & Other Willful Torts § 162 (1973) ............................. 8

6 McCarthy on Trademarks and Unfair Competition § 31:48 (4th ed. 2010)............. 21

Plaintiff Quidel Corporation submits this Memorandum of Points and Authorities in support of its Motion for (1) Summary Judgment or, in the Alternative, Partial Summary Judgment as to All of Defendant Siemens Healthcare Diagnostics Inc.'s Claims; and (2) Partial Summary Judgment as to Defendants' Unclean Hands Affirmative Defense.

## I.    INTRODUCTION

Quidel significantly limited the scope of Siemens Healthcare's counterclaims through its anti-SLAPP motion and this Court's ruling on that motion.  In its amended counterclaims, Siemens Healthcare asserts claims under California law for trade libel, abuse of process, and unfair competition.  Through this Motion, Quidel and the Court will put an end to Siemens Healthcare's claims in their entirety.

As explained below, based on the undisputed facts in this case, Quidel is entitled to judgment as a matter of law in its favor on all of Siemens Healthcare's claims.  In addition, Quidel is entitled to judgment as a matter of law in its favor with respect to Defendants' unclean hands affirmative defense.

With respect to Siemens Healthcare's trade libel claim, Quidel is entitled to summary judgment because Siemens Healthcare (a) failed to even allege the required element of special damages and, in any event, (b) cannot prove such damages.  With respect to Siemens Healthcare's abuse of process claim, Quidel is entitled to summary judgment because Quidel's alleged conduct is protected by California's litigation privilege.  With respect to Siemens Healthcare's unfair competition claims, Quidel is entitled to summary judgment because Siemens Healthcare does not have statutory standing to pursue an unfair competition claim, and the claim otherwise fails.  In addition, each of Siemens Healthcare's claims is barred, at least in part, by applicable statutes of limitation.

With respect to Defendants' unclean hands affirmative defense, Quidel is entitled to partial summary judgment because Defendants cannot prove essential elements of the defense.  Accordingly, Quidel requests that the Court grant its Motion.

## II.    PROCEDURAL HISTORY

**A.    Quidel's Original and First Amended Complaint and Siemens Healthcare's Original Counterclaims.**

On December 19, 2016, Quidel filed its Complaint against Defendant Siemens Medical Solutions USA, Inc. and asserted claims for Lanham Act false advertising, statutory unfair competition and false advertising under California Business and Professions Code §§ 17200 and 17500, and intentional and negligent interference with prospective economic advantage.  (ECF No. 1.)  On February 22, 2017, Quidel filed its First Amended Complaint (the "FAC"), in which it, among other things, added Siemens Healthcare as a defendant.  (ECF No. 12.)  Following the Court's denial of Defendants' motion to dismiss the FAC, on October 31, 2017, Defendants filed an Answer to the FAC.  (ECF Nos. 14, 22, 23.)

On October 24, 2018, Defendants filed a motion to modify the Court's scheduling order and for leave to file an amended answer and counterclaims.  (ECF No. 65.)  On March 27, 2019, the Court entered an order granting Defendants' motion.  (ECF No. 119.)  On April 1, 2019, Defendants filed a First Amended Answer to the FAC and Counterclaims on behalf of Siemens Healthcare against Quidel (as to the Counterclaims, the "Original Counterclaims").  (ECF No. 124.)

**B.    Order Granting Quidel's Special Motion to Strike Siemens Healthcare's Original Counterclaims.**

On April 18, 2019, Quidel filed a Special Motion to Strike the Original Counterclaims, in part, pursuant to California Code of Civil Procedure § 425.16.  (ECF No. 141.)  Siemens Healthcare opposed Quidel's motion.  (ECF No. 157.)

On September 27, 2019, the Court entered an Order Granting Plaintiff's Special Motion to Strike Defendant's Counterclaims (the "Order").  (ECF No. 247.)  The Order provided that "Siemens [Healthcare] is granted leave to amend and may file new counterclaims omitting the stricken material."  (*Id.* at p. 20.)  The Order also provided that Siemens Healthcare "may not add any new counterclaims or allegations, and the

only change it may make is to excise the allegations of protected activity the Court discusses in this Order." (*Id.*) The Order further provided that "Quidel's [previously filed] motion for summary judgment as to Siemens' counterclaims is now moot," but the Court granted Quidel leave to file this Motion within thirty days of Siemens' filing its amended counterclaims. (*Id.*)

## C. Defendants' Second Amended Answer and Siemens Healthcare's Amended Counterclaims.

On October 11, 2019, Defendants filed a Second Amended Answer and Counterclaims (as to the Counterclaims, "the Amended Counterclaims" and cited as "Am. CC"). (ECF No. 252.) In the Amended Counterclaims, Siemens Healthcare excised certain allegations of protected activity that the Court discussed in the Order and abandoned its intentional interference with prospective economic relations claim.

However, in clear violation of the Order, Siemens Healthcare included numerous allegations that did not appear in the Original Counterclaims. On October 25, 2019, Quidel filed (1) a Motion for Sanctions against Siemens Healthcare based on its willful violation of the Order, requesting that all the added allegations be stricken and an award of attorney's fees, and (2) its Answer to the Amended Counterclaims. (ECF Nos. 257, 258.)

### 1. Siemens Healthcare's Three Claims for Relief

In the Amended Counterclaims, Siemens Healthcare asserts three California state law claims against Quidel: unfair competition, trade libel, and abuse of process. (Am. CC at ¶¶ 57-70.) Siemens Healthcare's claims for relief are based, in part, on its allegations that (a) Quidel has allegedly lied to its customers regarding the reimbursement available from the federal government to laboratories for using Thyretain pursuant to Current Procedural Terminology ("CPT") codes (*id.* at ¶¶ 3-5, 25-35); (b) Quidel has allegedly "repeatedly misrepresented to laboratories that Thyretain is the 'only' assay that detects 'TSI only' and that 'differentiates between thyroid stimulating and thyroid blocking antibodies'" (*id.* at ¶¶ 6, 36-50); and (c)

Quidel has allegedly falsely "advertised on its website that its assay would provide 'results' in '3-4 hours as compared to 24-38 hours with' other assays" (*id.* at ¶¶ 7, 51-52).

### 2.   Defendants' Unclean Hands Affirmative Defense

In the Second Amended Answer to the FAC, Defendants list several affirmative defenses.  Defendants' second affirmative defense is titled "Unclean Hands."  (Second Am. Answer at p. 8.)  According to Defendants, "Quidel's claims are barred, in whole or in part, by the doctrine of unclean hands.  Quidel has engaged in, and continues to engage in, inequitable and unfair conduct that is directly related to the conduct that Quidel has challenged in this litigation."  (*Id.*)

Defendants describe the alleged inequitable and unfair conduct engaged in by Quidel as the "TSI only" issue described above, the CPT code reimbursement issue described above, the 3-to-4-hours-for-results issue described above, and Defendants' contention that Quidel is "marketing and selling a device that, under its theories, 'may lead to misdiagnosis.'"  (*Id.* at pp. 8-10.)  Defendants also incorporate by reference Siemens Healthcare's Amended Counterclaims "as further specification of Quidel's unclean hands."  (*Id.* at p. 10.)

## III.   ARGUMENT

## A.   <u>Quidel Is Entitled To Summary Judgment On All Of Siemens Healthcare's Amended Counterclaims Or, Alternatively, Partial Summary Judgment</u>.

### 1.   Summary Judgment Standards.

"A party may move for summary judgment, identifying each claim or defense— or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*

"The burdens faced by the opposing parties vary with the burden of proof they will face at trial."  *Youngevity Int'l v. Smith*, 350 F. Supp. 3d 919, 920 (S.D. Cal. 2018).

"[W]hen the moving party does not bear the burden of proof at trial, the [moving party] need only point to the insufficiency of the [nonmoving party's] evidence to shift the burden to the [nonmoving party] to raise genuine issues of fact as to each claim by substantial evidence." *Id.* at 920-21 (quotations and citations omitted). "If the nonmoving party then fails to raise a genuine issue of fact, the court should grant summary judgment in favor of the moving party." *Id.* at 921 (citation omitted); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000) ("If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment.") (citation omitted).

The nonmoving party's burden is such that it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). Rather, to survive summary judgment, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] upon mere allegation or denials of his pleadings." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"[U]nder federal law, stipulations and admissions in the pleadings are generally binding on the parties and the Court." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) (quotation omitted); *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995). "Factual assertions in pleadings . . . are considered judicial admissions conclusively binding on the party who made them." *Lacelaw*, 861 F.2d at 226 (citation omitted). In addition, "statements of fact contained in a brief may be considered admissions of the party in the discretion of the district court." *Id.* at 227.

"If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is

not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

2. **Trade Libel – Quidel is Entitled to Judgment in Its Favor Because Siemens Healthcare (A) Failed to Even Allege Special Damages and (B) Cannot Prove Special Damages.**

Siemens Healthcare's second claim is for trade libel. (Am. CC at ¶¶ 62-66.) California law defines trade libel as "an intentional disparagement of the quality of property [or a product], which results in pecuniary damage to plaintiff." *Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964). The elements of trade libel are (1) a false publication, (2) which induces others not to deal with the party, and (3) special damages. *Aetna Cas. & Surety Co. v. Centennial Ins. Co.*, 838 F.2d 346, 351 (9th Cir. 1988).

A cause of action for trade libel requires pleading and showing special damages in the form of pecuniary loss. *Leonardini v. Shell Oil, Co.*, 216 Cal. App. 3d 547, 572 (1989). Under the Federal Rules of Civil Procedure, special damages must be specifically stated. Fed. R. Civ. P. 9(g).

Here, Siemens Healthcare alleges that "Quidel has published in writing false statements identifying Siemens that are disparaging to Siemens and the IMMULITE TSI assay" and that "Quidel also knew that their [sic] published statements were false, or acted in reckless disregard or negligence of the truth or falsity of the statements." (Am. CC at ¶¶ 63-64.) Siemens Healthcare further alleges that "Quidel's false statements induced Siemens' prospective and existing customers to not deal with it" and that Siemens Healthcare suffered damages of legal fees, lost sales and customers, and loss of reputation and goodwill. (*Id.* at ¶¶ 10, 55, 61, 65-66.)

In *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14-03954 DDP (MANx), 2014 WL 6892141, at *4 (C.D. Cal. Nov. 5, 2014), the plaintiffs alleged special damages by alleging they suffered "general statements of economic loss" and it requested $3 million total for all causes of action. The court held "to

recover damages based on general business loss, Plaintiffs 'should have alleged facts showing an established business, the amount of sales for a substantial period preceding the publication, the amount of sales subsequent to the publication, [and] facts showing that such loss in sales were the natural and probable result of such publication[.]'" *Id.* (quoting *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1047 (C.D. Cal. 1998)).  Because the plaintiffs had only generally alleged lost sales, market share, and customer goodwill, they had not adequately alleged special damages for trade libel.  *Id.*  Further, courts have held if the plaintiff alleges lost sales, it must "identify particular customers and transactions of which it was deprived as a result of the libel." *Mann v. Quality Old Time Serv., Inc.*, 120 Cal. App. 4th 90, 109 (2004).

Based on the allegations in the Original Counterclaims and the authorities cited above, the Court concluded in the Order that Siemens Healthcare failed to allege special damages in the Original Counterclaims.  (Order at pp. 18-19.)  The Order also instructed Siemens Healthcare not to make any changes to the Original Counterclaims except to excise the allegations of protected activity described in the Order when it filed amended counterclaims.  (*Id.* at p. 20.)  Thus, had Siemens Healthcare complied with the Order, its trade libel claim—though now based solely on unprotected activity—was doomed because of Siemens Healthcare's failure to allege special damages.

Siemens Healthcare understood the import of the Court's rulings and, in violation of the Order, attempted to salvage its trade libel claim by adding the following language to the Amended Counterclaims:  "Quidel's wrongful statements disparaging Siemens and its product are *per se* libelous.  *See Gaspar Physical Therapy, Inc. v. Roberts*, 2018 U.S. Dist. LEXIS 185860 (S.D. Cal. Oct. 29, 2018)."  (Am. CC at ¶ 64.)  Siemens Healthcare added this language for a reason:  for a defamation claim based on *per se* libelous statements, special damages are not required.  *See Gaspar*, 2018 WL 5617699, at *7; Cal. Civ. Code §§ 45, 45a.  It did not, however, add any additional allegations concerning special damages.

In adding the citation to *Gaspar*, Siemens Healthcare failed to recognize two important things. First, "[t]rade libel is not . . . a true libel and is not actionable as defamation." *Aetna*, 838 F.2d at 351 (citing *Polygram Records, Inc. v. Superior Ct.*, 170 Cal. App. 3d 543, 548-49 (1985)). "It is more akin to unfair competition." *Id.* (citing 6 Cal.Jur.3d Assault & Other Willful Torts § 162 (1973)). "Trade libel and product disparagement are injurious falsehoods that interfere with business. Unlike classic defamation, they are not directed at the plaintiff's personal reputation but rather at the goods a plaintiff sells or the character of his other business." *Id.* (citing *Guess, Inc. v. Superior Ct.*, 176 Cal. App. 3d 473, 479 (1986)).

Second, the plaintiffs in *Gaspar* asserted true libel claims, which the court analyzed as traditional defamation claims. *Gaspar*, 2018 WL 5617699, at *4 ("Plaintiffs Gaspar Physical Therapy and Stone each bring libel claims. To prevail on a defamation claim under California law, a plaintiff must prove . . . ."). The phrase "trade libel" does not appear even once in *Gaspar*. *Id.*

In the Amended Counterclaims, Siemens Healthcare asserts a claim for trade libel, not defamation. Thus, *Gaspar* has no application whatsoever to Siemens Healthcare's trade libel claim.

An essential element of a trade libel claim is special damages. *Aetna*, 838 F.2d at 351. The *per se* libelous standard is not applicable to such claims. Thus, because Siemens Healthcare has not even alleged special damages in the Amended Counterclaims, Quidel is entitled to judgment in its favor on Siemens Healthcare's trade libel claim. *See id.*

Indeed, based on Siemens Healthcare's failure to even allege special damages, the Court could grant judgment in Quidel's favor pursuant to Rule 12(c). *See* Fed. R. Civ. P. 12(c) ("After the pleadings are closed – but enough not to delay trial – a party may move for judgment on the pleadings."); *Partnoy v. Shelley*, 277 F. Supp. 2d 1064, 1089 (S.D. Cal. 2003), *as modified on reconsideration* (Aug. 21, 2003) (explaining that "the legal sufficiency of the complaint may also be raised by the court sua sponte,

and judgment entered accordingly.") (citations omitted); *see also Youngevity Int'l Corp. v. Smith*, No. 16-CV-704-BTM-JLB, 2017 WL 6389776, at \*14 (S.D. Cal. Dec. 13, 2017), *aff'd in part, rev'd in part, dismissed in part sub nom. Youngevity Int'l Corp. v. Andreoli*, 749 F. App'x 634 (9th Cir. Jan. 24, 2019), *cert. denied*, No. 19-20, 2019 WL 4922623 (U.S. Oct. 7, 2019) (dismissing a trade libel claim premised on actions that were deemed unprotected activity under the anti-SLAPP statute pursuant to Rule 12(b)(6) because the claim "insufficiently allege[d] special damages under Rule 9(g).").

Even if Siemens Healthcare's trade libel claim did not fail at the pleading level, the Court should nevertheless grant Quidel summary judgment on that claim because Siemens Healthcare cannot prove that it suffered any special damages.

As explained above, a trade libel claim requires proof of "special damages in the form of pecuniary loss." *Leonardini*, 216 Cal. App. 3d at 572. Here, Siemens Healthcare admits that it has not suffered any special damages as a result of anything that Quidel is alleged to have done.

Although Siemens Healthcare contends that Quidel intended to induce Siemens Healthcare's prospective and existing customers "to not deal with it" (Am. CC at ¶ 65), Siemens Healthcare does not have any evidence that any of its prospective or existing customers stopped dealing with it as a result of anything that Quidel is alleged to have done. In fact, Siemens Healthcare admits that Sonic Healthcare USA and Laboratory Corporation of America ("LabCorp") actually switched from Quidel's assay to Siemens Healthcare's assay and were not persuaded by Quidel's alleged activities. (ECF No. 138-1 (Memo. of Points & Auth. in Support of Defs.' Mot. for Summ. J. at pp. 11-12) (explaining that Sonic and LabCorp "have switched to IMMULITE. (Ex. 48 at 5-7; Ex. 49 at 137:25-138:6.).".) Siemens Healthcare further admits that neither Sonic nor LabCorp were affected by Quidel's alleged efforts to interfere with their relationship with Siemens Healthcare. (*Id.* at 11-14.)

With respect to the physicians allegedly targeted by Quidel, Siemens Healthcare admits that those alleged efforts failed too. (*Id.* at 14 ("Quidel's Effort to Target Doctors Fails"; "Indeed, Quidel 'reach[ed] out' to physicians to ask them to order Thyretain, instead of TSI assays generically. That campaign failed. (Ex. 1 at 205:18-206:4.)").) Thus, Siemens Healthcare cannot prove that it suffered special damages.

Siemens Healthcare's lack of evidence of any special damages is further highlighted by the fact that Siemens Healthcare did not disclose any damages at any time during this case. Rule 26 requires disclosure of "a computation of each category of damages claimed by the disclosing party." Fed. R. Civ. P. 26(a)(1)(A)(iii). Rule 26 also requires disclosing parties to supplement their prior disclosures "in a timely manner" when the prior response is "incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). Rule 37 gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26 that is not properly disclosed. Fed. R. Civ. P. 37(c)(1). Here, Siemens has never made any such disclosures. (Declaration of T. Kevin Roosevelt, ¶ 3.)

Because Siemens Healthcare does not plead, let alone have evidence, that it suffered any special damages, the Court should grant Quidel summary judgment with respect to Siemens Healthcare's trade libel claim. *See, e.g., Erlich*, 224 Cal. App. 2d at 73 (explaining that the plaintiff failed to fulfill "the rigorous requirements of proof of damage" for a trade libel claim); *Hoffman v. Impact Confections, Inc.*, 544 F. Supp. 2d 1121, 1128 (S.D. Cal. 2008) ("[The defendant] is entitled to summary judgment on many of these claims because [the plaintiff] has failed to produce any evidence of damages.").

**3.      Abuse of Process – Quidel is Entitled to Judgment in Its Favor Because Its Alleged Conduct Is Protected by the Litigation Privilege.**

Siemens Healthcare's third claim is for abuse of process. (Am. CC at ¶¶ 67-70.) "To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2)

committed a willful act in the use of the process not proper in the regular conduct of the proceedings." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1056 (2006) (citations omitted). Simply filing or maintaining a lawsuit—even with an improper motive—is not actionable. *Silver v. Gold*, 211 Cal. App. 3d 17, 24 (1989). The tort must involve a misuse of the power of the court, or "an act done under the authority of the court for the purpose of perpetrating an injustice." *Younger v. Solomon*, 38 Cal. App. 3d 289, 297 (1974). There must be "an improper act outside the scope of judicial proceedings[,]" *Carlock v. RMP Fin.*, No. 03-cv-688 W(AJB), 2003 WL 24207625, at *2 (S.D. Cal. Aug. 5, 2003), because "maintenance of a lawsuit . . . is not a proper basis for an abuse of process action." *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.*, 42 Cal. 3d 1157, 1169 (1986) (citations omitted).

Here, the only alleged use of "process" referred to in the Amended Counterclaims is as follows: "Quidel sent its Original Complaint and Amended Complaint with letters to thousands of physicians and laboratories (who are the parties' customers), wherein Quidel reiterated its false and disparaging claims against Siemens and its assay." (Am. CC at ¶ 68.) However, this alleged conduct by Quidel falls squarely within California's litigation privilege.

Under California law, "[a] privileged publication or broadcast is one made: . . . (b) In any . . . (2) judicial proceeding." Cal. Civ. Code § 47(b). California's litigation privilege provides an absolute defense to defamation claims and all other tort claims except for malicious prosecution. *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990) (citations omitted). The purpose of California's litigation privilege "is to afford litigants . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions." *Id.* at 213 (citations omitted).

The litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action." *Id.* (citations omitted); *Mansell v. Otto*, 108 Cal. App. 4th 265,

271 (2003).  The litigation privilege "extends to communications regarding such judicial proceedings made to people with a substantial interest in the outcome of the pending litigation."  *Youngevity*, 749 F. App'x at 635 (concluding that the republication of a complaint and the dissemination of a press release to distributors and the marketing community, which had such a substantial interest in the outcome of litigation, constituted protected speech); *Healy v. Tuscany Hills Landscape & Recreation Corp.*, 137 Cal. App. 4th 1, 4-6 (2006); *Abraham v. Lancaster Cmty. Hosp.*, 217 Cal. App. 3d 796, 823-24 (1990) (finding that the dissemination of allegations in a pending lawsuit against a hospital administrator to the local medical community was privileged because the community possessed a substantial interest in the outcome of the pending litigation).  Moreover, "[a]ny doubt about whether the privilege applies is resolved in favor of applying it."  *Kashian v. Harriman*, 98 Cal. App. 4th 892, 913 (2002) (citation omitted).

Here, Siemens Healthcare alleges that Quidel communicated about Quidel's pleadings and allegations in this case with "thousands of physicians and laboratories (who are the parties' customers)."  (Am. CC at ¶ 68.)  These physicians and laboratories—by Siemens Healthcare's own admission—have a substantial interest in the outcome of the false advertising and other claims made in Quidel's original Complaint and the FAC related to Siemens' assay because they are "customers" as it relates to the assay.  (*Id.; see also id.* at ¶¶ 40-42, 69.)

In addition, as the Court concluded in the Order, "the customers and those buying products from a pharmaceutical company have at least 'some' interest in the litigation regarding those products.  For example, if the Court were to determine that a product was falsely advertised, the purchasers of that product would be interested in such a finding."  (Order at p. 9.)  Moreover, in the Court's October 21, 2019 Order Denying Defendants' Motion to Exclude the Survey, Expert Report, and Testimony of Matthew G. Ezell (ECF No. 253), the Court concluded that "[t]he evidence shows the

physicians are not simply end-users of the assay with no opinion as to what product they are using or no say in how they receive that product." (*Id.* at pp. 6-7.)

Thus, the alleged conduct by Quidel in communicating with physicians and laboratories about this litigation is barred by the litigation privilege. *See* Cal. Civ. Code § 47(b); *Youngevity*, 749 F. App'x at 635; *Healy,* 137 Cal. App. 4th at 4-6; *Abraham,* 217 Cal. App. 3d at 823-24. Accordingly, Quidel is entitled to judgment in its favor on Siemens Healthcare's abuse of process claim fails.

In yet another violation of the Order, Siemens Healthcare added a citation to "*Hardisty v. Moore*, 2012 U.S. Dist. LEXIS 61465, at *16-17 (S.D. Cal. May 2, 2012)" in the Amended Counterclaims with respect to its abuse of process claim. (Am. CC at ¶ 69.) But *Hardisty* does not help Siemens Healthcare.

In *Hardisty*, 2012 WL 1564533, the plaintiff alleged that the defendants filed a complaint "knowing it to be frivolous for the ulterior purpose of triggering Plaintiff's indemnity obligation to Great American and thereby causing default on the Moore Complaint for Declaratory Relief and coercing the surrender of assets by Plaintiff that Defendants were by no means entitled to." *Id.* at *6. Although the *Hardisty* court found that the plaintiff stated a claim for abuse of process, the court did not directly address the defendants' litigation privilege argument. *Id.* Under California law, the litigation privilege applies to abuse of process claims, *see, e.g., Rusheen*, 37 Cal. 4th at 1052, and, therefore, the *Hardisty* court erred in not addressing the defendants' litigation privilege argument. Moreover, the case the *Hardisty* court relied on for its statement that "[t]he use of civil litigation as a weapon to damage another's business may give rise to a cause of action for abuse of process" (as quoted by Siemens Healthcare in the Amended Counterclaims), *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293 (Utah 1982), was (a) later overruled by *Eldridge v. Johndrow*, 345 P.3d 553, 555 (Utah 2015), and (b) did not even involve a claim for abuse of process.

For these reasons, *Hardisty* is not even persuasive authority related to the litigation privilege analysis and does not save Siemens Healthcare's abuse of process

claim.  Thus, Quidel is entitled to judgment in its favor on Siemens Healthcare's abuse of process claim.

### 4.     Unfair Competition – Quidel is Entitled to Judgment in Its Favor Because Siemens Healthcare Does Not Have Standing to Pursue A UCL Claim, and the Claim Otherwise Fails.

Siemens Healthcare's first claim is for alleged unlawful, unfair, and fraudulent trade practices in violation of California Business and Professions Code § 17200, et seq.  (Am. CC at ¶¶ 57-61.)  California law prohibits unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.

Here, Siemens Healthcare alleges that Quidel engaged in unlawful and unfair businesses practices.  (Am. CC at ¶¶ 59-60.)  To state a cause of action based on an "unlawful" business act or practice under the UCL, a plaintiff must establish a violation of some underlying law by the defendant.  *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1471 (2006).  A business practice is "unfair" under Section 17200 "if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."  *Id.* at 1473 (citations omitted).

"The UCL limits the remedies available for UCL violations to restitution and injunctive relief . . . ."  *Madrid* (citations omitted); Cal. Bus. & Prof. Code § 17203 "[I]n the context of the UCL, 'restitution' is limited to the return of property or funds in which the plaintiff has an ownership interest (or is claiming through someone with an ownership interest)."  *Madrid*, 130 Cal. App. 4th at 453 (citation omitted); *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003) (explaining that restitution under the UCL is limited to the return of money that was once in the plaintiff's possession or money in which the plaintiff had a vested interest).

Here, Siemens Healthcare alleges that "Quidel has engaged, and continues to engage, in unlawful practices by, without limitation, violating the following state and

federal laws: (i) the False Claims Act, 31 U.S.C. § 3729; (ii) the California common law prohibition against trade libel; and (iii) the California False Claims Act, Cal. Gov't Code § 12651." (Am. CC at ¶ 59.) Siemens Healthcare also alleges that "Quidel has also engaged, and continues to engage, in unfair practices and unfair, deceptive, untrue or misleading advertising by making false, comparative claims, including: (i) mispresenting that Thyretain is the only commercial available assay that can detect TSI only; (ii) misrepresenting the correct reimbursement rate for Thyretain; and (iii) misrepresenting the amount of time necessary for laboratories to produce test results utilizing Thyretain." (Am. CC at ¶ 60.)

In order to have standing to pursue a UCL claim, the plaintiff must have suffered an injury in fact and have lost money or property. Cal. Bus. & Prof. Code § 17204 Actions for relief pursuant to this chapter shall be prosecuted . . . by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition."); *see also Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006) (holding that, after Proposition 64, a private person has standing to sue only if he or she "has suffered injury in fact and has lost money or property as a result of such unfair competition."). "Proposition 64 requires that a plaintiff have 'lost money or property' to have standing to sue. The plain import of this is that a plaintiff now must demonstrate some form of economic injury." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323 (2011) (citations omitted).

Here, as explained above, Siemens Healthcare does not have any evidence that it lost any money or property as a result of Quidel's alleged unfair competition. In fact, Siemens Healthcare insists that it did not lose any such money or property. See Section III.A(2) above. Thus, Siemens Healthcare does not have standing to pursue a UCL claim against Quidel. *See* Cal. Bus. & Prof. Code § 17204.

In addition, especially with respect to Siemens Healthcare's state and federal false claims act allegations, Siemens Healthcare cannot show that it was injured as a result of Quidel's alleged conduct. *See In re Actimmune Mktg. Litig.*, No. C 08-02376

MHP, 2010 WL 3463491, at *11 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 F. App'x 651 (9th Cir. 2011) ("Plaintiffs' unlawful-prong claims based upon defendants' alleged violations of the False Claims Act (FCA), 31 U.S.C. § 3729-33, require far less discussion. . . . Although plaintiffs have submitted sufficient allegations to support an inference that defendants violated the FCA, plaintiffs have included no allegations regarding how they were injured 'as a result of' that conduct."); *Hall v. Sea World Entm't, Inc.*, No. 3:15-CV-660-CAB-RBB, 2016 WL 4595948, at *5 (S.D. Cal. May 13, 2016), *aff'd sub nom. Hall v. SeaWorld Entm't, Inc.*, 747 F. App'x 449 (9th Cir. 2018) ("Because Plaintiffs did not suffer (and could not have suffered) any economic injury caused by SeaWorld's alleged violation of animal cruelty laws, they lack standing to bring a UCL claim predicated on a violation of Section 597(b). Accordingly, this claim under the UCL's unlawful prong is also dismissed with prejudice.").  Thus, Quidel is entitled to judgment in its favor on Siemens Healthcare's UCL claim.

Even if Siemens Healthcare had standing to pursue a UCL claim, to the extent that Siemens Healthcare's UCL claim is premised on alleged unlawful conduct, the claim fails because Siemens Healthcare cannot prove that Quidel violated any laws. First, as explained above in Section III.A(2), Quidel is entitled to judgment in its favor as a matter of law with respect to Siemens Healthcare's trade libel claim.

Second, with respect to the false claims act allegations related to submission of claims to governmental entities for reimbursement related to Quidel's assay, Siemens Healthcare has admitted that the parties' customers alone determine the appropriate reimbursement rates for the assays, not Quidel.  (ECF No. 138-1 (Memo. of Points & Auth. in Support of Defs.' Mot. for Summ. J. at pp. 8-9) (citing Ex. 24 at 266:9-267:18; Ex. 30 at 60:21-61:21.)).)  Thus, Siemens Healthcare cannot prove that Quidel engaged in any unlawful conduct with respect to its UCL claim.  *See, e.g., Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("A defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having

violated another law."); *Renick v. Dun & Bradstreet Receivable Mgmt. Servs.*, 290 F.3d 1055, 1058 (9th Cir. 2002) ("Dun & Bradstreet's notice also did not constitute an 'unlawful, unfair or fraudulent business act or practice,' in violation of the California Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200, because the state claim hinges on Renick's rejected federal claim.").

Moreover, even if Siemens Healthcare had standing to pursue a UCL claim and could prove any sort of alleged violation, Siemens Healthcare cannot prove (according to its own pleading) that Quidel has possession of money that was once in Siemens Healthcare's possession or money in which Siemens Healthcare had a vested interest. Thus, Siemens Healthcare is not entitled, under any circumstances, to restitution under its UCL claim. *See Madrid*, 130 Cal. App. 4th at 452-53.

Accordingly, Quidel is entitled to summary judgment in its favor with respect to Siemens Healthcare's UCL claim (or, at a minimum, partial summary judgment).

**5. Siemens Healthcare's Claims are Barred, at Least in Part, by Statutes of Limitation.**

Siemens Healthcare's claims fail as a matter of law, at least in part, for another reason too: statutes of limitation. An abuse of process claim has a one-year statute of limitations. *Cantu v. Resolution Tr. Corp.*, 4 Cal. App. 4th 857, 886-87 (1992) (citing Cal. Civ. Proc. Code § 340(3)). A trade libel claim has a two-year statute of limitations. *Guess, Inc. v. Superior Ct.*, 176 Cal. App. 3d 473, 479 (1986) (citing Cal. Civ. Proc. Code § 339(1)). "Any action to enforce any cause of action [under California Business & Professions Code Section 17200] shall be commenced within four years after the cause of action accrued." Cal. Bus. & Prof. Code § 17208.

Here, Siemens Healthcare filed the Original Counterclaims on April 1, 2019. In the Amended Counterclaims, Siemens Healthcare references dates of alleged conduct by Quidel that implicate applicable statutes of limitation. For example:

a. "Since it launched Thyretain in 2009, Quidel has told the parties' customers to seek reimbursement from the federal government under a reimbursement code that

Quidel knew, and was specifically advised by external consultants, did not apply to Thyretain."  (Am. CC at ¶ 3.)

b.  "Quidel began making these claims when it launched Thyretain in 2009."  (*Id.* at ¶ 36.)

c.  "In 2016, facing competition from a cheaper, faster, and higher performing assay, Quidel went on the negative."  (*Id.* at ¶ 39.)

d.  "In 2017, moreover, Quidel's Chief Executive Officer Douglas Bryant sent multiple letters to LabCorp, asserting that 'IMMULITE Assay also detects thyroid-blocking antibodies,' and that the 'IMMULITE Assay' may 'lead to false positives and misdiagnosis and mistreatment of patients.'"  (*Id.* at ¶ 40.)

e.  "In 2017, Quidel purchased a list of more than 10,000 physicians that might order a TSI test for their patients.  Quidel directly contacted those physicians, saying that the IMMULITE TSI assay 'cannot differentiate between the Ab functionality,' but 'Quidel's Thyretain bioassay' can 'differentiate between' TSI and TBI."  (*Id.* at ¶ 42.)

f.  "Moreover, for the last nine years, Quidel's reimbursement strategy has been defrauding the public, the states, and the federal government."  (*Id.* at ¶ 56.)

Based on the April 1, 2019 filing date for Siemens Healthcare's claims:

1.  To the extent that Siemens Healthcare's abuse of process claim is based on alleged conduct by Quidel that occurred prior to April 1, 2018, the claim is time-barred (*see* Cal. Civ. Proc. Code § 340(3));

2.  To the extent that Siemens Healthcare's trade libel claim is based on alleged conduct by Quidel that occurred prior to April 1, 2017, the claim is time-barred (*see* Cal. Civ. Proc. Code § 339(1)); and

3.  To the extent that Siemens Healthcare's UCL claim is based on alleged conduct by Quidel that occurred prior to April 1, 2015, the claim is time-barred (*see* Cal. Bus. & Prof. Code § 17208).

Accordingly, Quidel is entitled, at a minimum, to partial summary judgment in its favor with respect to all of Siemens Healthcare's claims based on applicable statutes of limitations.

**B.     Quidel Is Entitled To Partial Summary Judgment As To Defendants' Unclean Hands Affirmative Defense.**

**1.     The Unclean Hands Doctrine.**

"Unclean hands is a defense to a Lanham Act infringement suit." *Japan Telecom, Inc. v. Japan Telecom Am. Inc.*, 287 F.3d 866, 870 (9th Cir. 2002) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987)); *see Emco, Inc. v. Obst*, No. CV03-6432-R (RZX), 2004 WL 1737355, at *4 (C.D. Cal. May 7, 2004) (applying the unclean hands defense to a Lanham Act false advertising claim). The doctrine of unclean hands "demands that a plaintiff act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." *Kendall-Jackson Winery, Ltd. v. Superior Ct.*, 76 Cal. App. 4th 970, 978 (1999) (citing *Precision Co. v. Automotive Co.*, 324 U.S. 806, 814-15 (1945); and *Hall v. Wright*, 240 F.2d 787, 794-95 (9th Cir. 1957)). To prevail on a defense of unclean hands, a defendant must demonstrate by clear and convincing evidence: (1) "that the plaintiff's conduct is inequitable;" and (2) "that the conduct relates to the subject matter of [the plaintiff's] claims." *Fuddruckers,* 826 F.2d at 847; *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1113 (C.D. Cal. 2010).

**2.     Defendants Cannot Prove Essential Elements of Their Unclean Hands Affirmative Defense.**

Here, with respect to their purported unclean hands affirmative defense, Defendants describe the alleged inequitable and unfair conduct engaged in by Quidel as (a) the "TSI only" issue described above, the CPT code reimbursement issue described above, the 3-to-4-hours-for-results issue described above, and Defendants' contention that Quidel is "marketing and selling a device that, under its theories, 'may

lead to misdiagnosis,'" and (b) the conduct alleged in Siemens Healthcare's Amended Counterclaims. (Second Am. Answer at pp. 8-10.)

However, as discussed above, Defendants do not have any evidence that they suffered any harm as a result of Quidel's alleged conduct. In fact, Siemens Healthcare insists that it did not suffer any such harm. See Section III.A(2) above. Defendants also have no evidence of harm to others caused by Quidel's alleged conduct.[1] Consequently, Defendants' failure to demonstrate the existence or extent of harm caused by Quidel's alleged conduct precludes a finding that it would be inequitable for Quidel to proceed on its claims. *See, e.g., Pom Wonderful*, 737 F. Supp. 2d at 1113 ("[Defendant]'s failure to demonstrate the existence or extent of harm caused by [plaintiff]'s deception precludes a finding that it would be inequitable for [plaintiff] to proceed on its claims.") (citing *Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 349-350 (9th Cir. 1963)); *Merisant Co. v. McNeil Nutritionals, LLC*, 515 F. Supp. 2d 509, 536 (E.D. Pa. 2007) (granting partial summary judgment in a Lanham Act false advertising case on the defendant's unclean hands affirmative defense because the defendant did not produce any evidence that "either it or the public interest have been injured by [the plaintiff's] alleged misconduct."). Accordingly, Quidel is entitled to partial summary judgment in its favor with respect to Defendants' unclean hands affirmative defense.

Even if Defendants are allowed to assert their unclean hands affirmative defense in the absence of any harm, Quidel is nevertheless entitled, at a minimum, to partial summary judgment with respect to the defense for the following reasons:

1. To the extent that Defendants' unclean hands affirmative defense is based on the CPT code reimbursement issue described above, the defense fails as a matter of

---

[1] Unlike Defendants, Quidel has a consumer survey and other direct evidence of confusion caused by Defendants' conduct (*See, e.g.,* ECF No. 253 (Order Denying Defendants' Motion to Exclude the Survey, Expert Report, and Testimony of Matthew G. Ezell).)

law in light of the Court's October 21, 2019 Order (1) Granting in Part and Denying in Part Defendants' Motion for Summary Judgment; and (2) Denying Plaintiff's Motion for Summary Judgment. (ECF No. 254). In that order, the Court ruled as follows:

> Turning to Defendants' second unclean hands theory, Defendants allege Plaintiff engaged in an "illicit reimbursement scheme" by telling customers to use the wrong Current Procedural Terminology ("CPT") billing code to submit reimbursement claims for Thyretain. (Def. Mot. at 9, 24.) Defendant argues this allowed Plaintiff to charge an inflated price for Thyretain. In response, Plaintiff argues that this allegation is not at all related to its claims against Defendants and therefore cannot form an unclean hands defense. (Opp'n at 25.) Indeed, the unclean hands defense is not designed so a party may bring up "misconduct in the abstract, unrelated to the claim to which it is asserted as a defense." *Republic Molding Corp. v. B.W. Photo Utils.*, 319 F.2d 347, 349 (9th Cir. 1963). It can only be applied "where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation." *TrafficSchool.com, Inc. v. Edriver, Inc.*, 633 F. Supp. 2d 1063, 1084 (C.D. Cal. 2008). Because the Court grants judgment as to Plaintiff's claims regarding the laboratories in this Order, Defendants' unclean hands claim no longer is related to the claims at issue. Defendants claim Plaintiff told laboratories to use the wrong billing code, and thus profited more than it should have. This defense is not sufficiently related to what is left of Plaintiff's case after this Order.
>
> This is especially true considering Defendants' timeline of the alleged scheme (and whether it overlaps with the present suit) is unclear, and "past misconduct cannot form the basis for an unclean hands defense: 'Plaintiff's position must be judged by the facts existing as they were when suit was begun, not by the facts existing in an earlier time.'" *Pom Wonderful LLC v. Welch Foods, Inc.*, 737 F. Supp. 2d 1105, 1109 (C.D. Cal. 2010) (quoting 6 McCarthy on Trademarks and Unfair Competition § 31:48 (4th ed. 2010)).

(*Id.* at pp. 19-20.)

2. To the extent that Defendants' unclean hands affirmative defense is based on the 3-to-4-hours-for-results issue described above, the defense fails as a matter of law for the same reasons that the CPT code reimbursement issue described above fails. *See id.* It is the laboratories that run the test and would be concerned about run time. Siemens has no evidence at all that any doctors expressed any opinion or concern about how long it takes to run the test.

Moreover, Siemens is wrong. Thyretain can be run in 3-4 hours. Thyretain is a cell-based assay, which allows it to differentiate between TSI and TBI, unlike Immulite, which is merely a binding assay. Siemens conflates the 3-to-4-hours-for-

results issue by adding in the process of culturing the cells, which is done overnight before any samples arrive at the laboratories to be tested.

3.  To the extent that Defendants' unclean hands affirmative defense is based on Siemens Healthcare's Amended Counterclaims, the defense fails as a matter of law for the reasons set forth above regarding why all of Siemens Healthcare's claims fail. *See* Section III.A above.

4.  To the extent that Defendants' unclean hands affirmative defense is directed to Quidel's claims for Statutory Unfair Competition and False Advertising under California Business and Professions Code §§ 17200 and 17500, the defense fails as a matter of law because this equitable defense cannot be used to defeat such claims. *See Certified Nutraceuticals, Inc. v. Avicenna Nutraceutical, LLC*, No. 3:16-cv-02810-BEN-BGS, 2018 WL 3618243, at *5 (S.D. Cal. July 30, 2018).

For these reasons, Quidel is entitled to partial summary judgment in its favor with respect to Defendants' unclean hands affirmative defense.

## IV.    CONCLUSION

For the foregoing reasons, Quidel requests that the Court grant its Motion and grant other such relief as is just and appropriate.

DATED:  November 8, 2019       FINLAYSON TOFFER
                                 ROOSEVELT & LILLY LLP

By:____*/s/ T. Kevin Roosevelt*_____
            T. Kevin Roosevelt
            Attorneys for Plaintiff
           QUIDEL CORPORATION

# PROOF OF SERVICE

I am over the age of eighteen years and am not a party to the within action. I am employed in the County of Orange, State of California, at the law offices of Finlayson Toffer Roosevelt & Lilly LLP, members of the bar of this Court. My business address is 15615 Alton Parkway, Suite 250, Irvine, California 92618. On November 8, 2019, I served ☑ a true copy / ☐ the original of the foregoing document(s) described as:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR (1) SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT AS TO ALL OF DEFENDANT SIEMENS HEALTHCARE DIAGNOSTICS INC.'S CLAIMS; AND (2) PARTIAL SUMMARY JUDGMENT AS TO DEFENDANTS' UNCLEAN HANDS AFFIRMATIVE DEFENSE**

✓ **BY CM/ECF NOTICE OF ELECTRONIC FILING**: Pursuant to controlling General Orders, a true copy will be served by the Court via Notice of Electronic Filing ("NEF") and hyperlink to the document. I checked the CM/ECF docket for this case and determined that the parties on the attached Service List are on the Electronic Mail Notice List to receive NEF transmission at the electronic mail addresses noted.

___ **BY UNITED STATES MAIL**: I enclosed the document(s) in a sealed envelope or package to the parties on the attached Service List and placed it for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

___ **BY OVERNIGHT DELIVERY**: I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed to the parties on the attached Service List. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

___ **BY ELECTRONIC MAIL**: I caused the document(s) to be sent to the parties on the attached Service List at the electronic mail addresses listed.

___ **BY FACSIMILE**: I faxed the document(s) to the parties on the attached Service List at the fax numbers listed. No error was reported by the fax machine that I used. A fax transmission record was printed, a copy of which is maintained by this office.

___ **BY MESSENGER SERVICE**: I provided the document(s) to a professional messenger service for delivery to the parties on the attached Service List.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on November 8, 2019.

_____
Hind AbdulKader

23

## <u>SERVICE LIST</u>

M.D. Scully
GORDON & REES LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101
mscully@gordonrees.com
Tel: (213) 270-7871

*Attorneys for Defendants Siemens Medical Solutions USA, Inc. and Siemens Healthcare Diagnostics, Inc.*

Erik Haas
Rachel Sherman
PATTERSON BELKNAP WEBB
& TYLER LLP
1133 Avenue of the Americas
New York, New York 1003
ehaas@pbwt.com
rsherman@pbwt.com
Tel: (212) 336-2117
Fax: (212) 336-2222

*Attorneys for Defendants Siemens Medical Solutions USA, Inc. and Siemens Healthcare Diagnostics, Inc.*