1

2

3

4

5

6

7

8

9    **UNITED STATES DISTRICT COURT**

10    **SOUTHERN DISTRICT OF CALIFORNIA**

11

12    QUIDEL CORPORATION,                    Case No. 16-cv-3059-BAS-AGS

                             Plaintiff,        **ORDER GRANTING MOTIONS**
13                                             **TO SEAL**

14        v.                                   **[ECF Nos. 302, 304, 307, 311, 316]**

15    SIEMENS MEDICAL SOLUTIONS
      USA, INC., *et al.*,
16
                             Defendants.
17

18            Both parties have filed motions to seal.  (ECF Nos. 302, 304, 307, 311, 316.)

19    The parties seek to seal various exhibits filed as attachments of their motions,

20    oppositions, and reply briefs.  For the most part, the parties seek to seal exhibits

21    solely because the other party has marked information within the exhibits as

22    confidential pursuant to a protective order.  Therefore, the Court ordered each party

23    to respond to the other's motions to seal and provide compelling reasons for the

24    sealing of the material, as well as file a public version of that document with proposed

25    redactions.  The parties did so.

26    **I.    LEGAL STANDARD**

27            "[T]he courts of this country recognize a general right to inspect and copy

28    public records and documents, including judicial records and documents." *Nixon v.*

*Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "Unless a particular court record is one 'traditionally kept secret,' a 'strong presumption in favor of access' is the starting point." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citing *Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003)). "The presumption of access is 'based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

A party seeking to seal a judicial record bears the burden of overcoming the strong presumption of access. *Foltz*, 331 F.3d at 1135. The showing required to meet this burden depends upon whether the documents to be sealed relate to a motion that is "more than tangentially related to the merits of the case." *Ctr. for Auto Safety*, 809 F.3d at 1102. When the underlying motion is more than tangentially related to the merits, the "compelling reasons" standard applies. *Id.* at 1096–98. When the underlying motion does not surpass the tangential relevance threshold, the "good cause" standard applies. *Id.*

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exists when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon*, 435 U.S. at 598). However, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.* (citing *Foltz*, 331 F.3d at 1136). The decision to seal documents is "one best left to the sound discretion of the trial court" upon consideration of "the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.

## II.   ANALYSIS

Because all documents to be sealed relate to the parties' motions for summary judgment, which are "more than tangentially related to the merits of the case," the compelling reasons standard applies.

**ECF No. 302**

Quidel seeks to seal Exhibit G to the Declaration of T. Kevin Roosevelt, as well as portions of its Motion that reference the exhibit. Siemens claims this exhibit "contains confidential Siemens information related to its product development and regulatory strategy" for a product. (ECF No. 324, at 6.) Siemens claims disclosure of this document could cause Siemens harm because it would allow competitors to see how Siemens approaches product development decisions. Compelling reasons may exist if sealing is required to prevent documents from being used "as sources of business information that might harm a litigant's competitive standing." *Nixon*, 435 U.S. at 598; *see Algarin v. Maybelline, LLC*, No. 12-3000, 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014) (granting L'Oreal's motion to seal where "[p]ublic disclosure of L'Oréal's confidential business material, marketing strategies, [and] product development plans could result in improper use by business competitors seeking to replicate L'Oréal's business practices and circumvent the time and resources necessary in developing their own practices and strategies"). Accordingly, the Court finds compelling reasons to seal Exhibit G and **GRANTS** ECF No. 302.

**ECF Nos. 304 and 316**

Siemens moves to seal Exhibits 1–3, 8–10, 14, 19–20, and 26 to the Declaration of Erik Haas filed in support of Siemens' MSJ. (ECF No 304.)[1] Siemens also seeks to seal Exhibits 27 and 29–32 to the Haas reply declaration. (ECF No.

---

[1] The Court has previously sealed Exhibit 8 and it finds compelling reasons to seal it again. (ECF No. 283, at 3 (finding the exhibit "reflect[s] Quidel's confidential financial and pricing information regarding Thyretain," and that "this information is sealable under the compelling reasons standard").

316.)

Quidel contends the redacted information in Exhibit 9 "reflects in detail the direct and indirect costs attributable to Quidel's manufacturing, marketing and sales of Thyretain from 2010 through 2018, including employee wages and benefits, research and development, and sales and marketing costs." (ECF No. 322, at 4.) Exhibits 10 and 14 "reflect Quidel's monthly sales of Thyretain to certain customers from 2009 through 2018, including the price of Thyretain, how many units were sold, the revenue Quidel earned, whether sales were increasing quarter over quarter, and other metrics." (*Id*.) Exhibit 19 contains excerpts of expert witness Robert Wunderlich's deposition and contains information on Quidel's sales and costs of goods. (*Id*. at 5.) Exhibit 1 and Exhibit 30 (to the reply declaration) and Quidel's own Exhibit ZZ contain excerpts from the deposition of Michelle Brooks, and the redacted portions contain financial revenue information, financial reports, marketing and pricing strategy, and Thyretain costs. (*Id*. at 7.) Exhibit 3 and Quidel's own Exhibit YY contain excerpts from the deposition of Kristen Caltrider, who testified regarding Quidel's pricing strategy, compensation details, and financial reports. Exhibit 31 (to the reply declaration) and Quidel's own Exhibit XX contain excerpts from the deposition of Jeffrey Houtz, who testified regarding Quidel's marketing plan.

"[U]nder Ninth Circuit law, pricing, profit, and customer usage information, when kept confidential by a company, is appropriately sealable under the 'compelling reasons' standard where that information could be used to the company's competitive disadvantage." *Icon-IP Pty Ltd*. *v*. *Specialized Bicycle Components, Inc*., No. 12-cv-03844-JST, 2015 WL 984121, at *2 (N.D. Cal. Mar. 4, 2015) (citation omitted). Further, business and marketing plans reflecting "internal discussions and plans" are sealable. *United States v*. *Celgene Corp*., No. CV 10-3165 GHK (SS), 2016 WL 6609375, at *4 (C.D. Cal. Aug. 23, 2016). For these reasons, the Court finds compelling reasons to seal the above exhibits.

Quidel contends the redacted information in Exhibits 2, 20, 27, and its own Exhibit CCC reflect Quidel's confidential customer list. (ECF No. 322, at 9.) The Court agrees and finds compelling reasons to seal the exhibits. *See Mezzadri v. Med. Depot, Inc.*, No. 14-cv-2330-AJB-DHB, 2015 WL 12564223, at *2 (S.D. Cal. Dec. 18, 2015) ("A customer list may qualify as a trade secret because of its economic value when its disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product as opposed to a list of people who only might be interested and [the parties] took reasonable steps to protect this information." (internal citations omitted)).

Exhibit 26 contains Thyretain's launch plan and contains trade secret sales and marketing strategy, and Exhibit 32 contains information regarding Quidel's contract with Sonic. The Court finds compelling reasons to seal the exhibits. *See Algarin*, 2014 WL 690410, at *3. Exhibits F and HH contains pricing information and Exhibits II, JJ, and NN reflect internal communication between LabCorp employees. The Court finds compelling reasons to seal the exhibits. *See Icon-IP Pty Ltd*., 2015 WL 984121, at *2. Exhibit 29 is a deposition excerpt that contains pricing information for Sonic that Sonic asserts is confidential. (ECF No. 316, at 3.) The Court finds confidential pricing information in the exhibit and finds it to be sealable.

The Court finds compelling reasons to seal the exhibits and **GRANTS** ECF Nos. 304 and 316.

**ECF No. 307**

Siemens seeks to seal Exhibits 1–2, 6, 8–10, 12, and 20–21 to the Declaration of Erik Haas filed in support of Siemens' opposition to Quidel's MSJ.[2]

---

[2] Exhibits 1, 2, and 6 have already been sealed by the Court and the Court again finds compelling reasons to seal these exhibits. (*See* ECF No 283, at 3 (finding the exhibits "reflect Quidel's confidential financial and pricing information regarding Thyretain," and "reflect[] confidential reimbursement analysis for products not related to this litigation").

Quidel contends that Exhibit 8, 9, and 10 need not be filed under seal. (ECF No. 323 at 1 n.1.) Because these documents are now under seal and Quidel did not file copies of the exhibits on the public docket, Quidel must do so.

Quidel contends that Exhibits 12 and 21 contain confidential internal sales briefing and strategy for Thyretain, namely a presentation and internal guide regarding sales and strategies.  (ECF No. 323, at 4–5.)  Although these exhibits contain information the Court believes is publicly available, the Court finds compelling reasons to seal the document because it contains Quidel's strategy and method for launching Thyretain.  (*See* Houtz Decl. ECF No. 323-2, ¶ 4 (attesting that the exhibits "reflect Quidel's proprietary and trade secret methods for launching a product, developing leads, developing a market for a product, and ultimately generating revenue from that product")).

Exhibit 20 is a copy of Quidel's Premarket Notification 510(k) Submission to the FDA for Thyretain.  Upon review, the Court finds that the 510(k) submission contains confidential material that may harm Quidel's competitive standing.  *See Lucas v. Breg, Inc.*, 15-cv-258-BAS-NLS, 2016 WL 5464549, at *2 (S.D. Cal. Sept. 28, 2016).

The Court finds compelling reasons to seal the exhibits and **GRANTS** ECF No. 307.

**ECF No. 311**

Quidel seeks to file under seal multiple exhibits.

As to exhibits F, HH, II, JJ, and NN, Quidel contends that LabCorp designated these exhibits as confidential.  (ECF No. 311, at 3.)[3]  The Court finds confidential pricing information in these exhibits and finds them to be sealable.  *See Icon-IP Pty Ltd.*, 2015 WL 984121, at *2.

Quidel designated Exhibits XX, YY, ZZ, AAA, BBB, and CCC as confidential.  "The information contained in Exhibits XX and ZZ reflect Quidel's confidential strategy in how to communicate with clinicians regarding whether they would continue to order Thyretain despite the fact that it would no longer be offered

---

[3] Quidel contends that Sonic designated Exhibit PP as confidential, but Quidel now no longer seeks to seal this exhibit, and the exhibit has been filed on the docket.  (ECF No. 322, at 1 n.1.)

by LabCorp and the costs associated with doing so." (ECF No. 311, at 3.) Exhibit YY contains information on "the specific entities with whom Quidel contracted and the amounts it spent to communicate with clinicians regarding Siemens' false advertising." (*Id*. at 4.) Because customer lists and marketing strategies are confidential, the Court agrees this information should be sealed.

Exhibit AAA contains discussion by Dr. Kahaly regarding activities "that are confidential under the terms of his consulting agreement." (*Id*.) "The public release of the terms of Dr. Kahaly's consulting agreement would severely harm Quidel because it regularly negotiates and enters into consulting agreements related to the development and promotion of its products and information about the activities that Dr. Kahaly conducts on behalf of Quidel could be used against Quidel in future negotiations for similar agreements. This would seriously impact Quidel's business operations, as it relies upon the work of its consultants to conduct research, generate knowledge and goodwill, and promote its products." (*Id*.) The Court finds compelling reasons to seal this exhibit.

Quidel contends Exhibits BBB and CCC contain "Quidel's highly sensitive financial information, reflecting its revenues, costs, strategic plans, and pricing for Thyretain." (*Id*. at 5.) The Court finds compelling reasons to seal these exhibits. *See Icon-IP Pty Ltd.*, 2015 WL 984121, at *2.

Siemens has designated Exhibits H, I, K, M, R, X, EE, GG, KK, QQ, and VV as confidential. The Court has evaluated these documents and finds the redacted information "contains confidential business material, such as marketing strategies, product development plans, licensing agreements, and profit, cost, and margin data." *See Cohen v. Trump*, No. 13-cv-2519-GPC-WVG, 2016 WL 3036302, at *5 (S.D. Cal. May 27, 2016). Disclosure of this information would cause competitive harm to Siemens.

The Court finds compelling reasons to seal the exhibits and **GRANTS** ECF No. 311.

III.    **CONCLUSION**

The Court **GRANTS** the pending Motions to Seal: ECF Nos. 302, 304, 307, 311, 316.  Because Quidel now contends that Exhibits 8, 9, and 10 to the Declaration of Erik Haas filed in support of Siemens' opposition to Quidel's MSJ need not be filed under seal, Quidel must file these documents on the public docket within seven days of the date of this order.

**IT IS SO ORDERED.**

**DATED: August 17, 2020.**

Hon. Cynthia Bashant
United States District Judge